PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES KEA,

  *Petitioner,*

v.

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

  *Respondents.*

No. 06-1320

On Petition for Review of an Order
of the Benefits Review Board.
(05-0515)

Argued: March 12, 2007

Decided: June 18, 2007

Before WILLIAMS, TRAXLER, and SHEDD, Circuit Judges.

Petition for review granted; vacated and remanded by published opinion. Judge Traxler wrote the opinion, in which Judge Williams and Judge Shedd joined.

## COUNSEL

**ARGUED:** Gregory Edward Camden, MONTAGNA, KLEIN, CAMDEN, L.L.P., Norfolk, Virginia, for Petitioner. Richard Anthony Seid, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Respondents. **ON BRIEF:** Jonathan H.

Walker, MASON, MASON, WALKER & HEDRICK, P.C., Newport News, Virginia, for Respondent Newport News Shipbuilding and Dry Dock Company. Howard M. Radzely, Solicitor of Labor, Allen H. Feldman, Associate Solicitor, Mark A. Reinhalter, Counsel for Longshore, UNITED STATES DEPARTMENT OF LABOR, Office of the Solicitor, Washington, D.C., for Federal Respondent.

## OPINION

TRAXLER, Circuit Judge:

James Kea petitions for review of the Decision and Order of the Benefits Review Board (the "Board") denying his request for modification of his award of compensation pursuant to § 922 of the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"), 33 U.S.C.A. § 922 (West 2001). For the following reasons, we grant the petition for review, vacate the Board's order, and remand.

I.

On April 6, 1995, Kea injured his right leg while working as a shipbuilder for Newport News Shipbuilding and Dry Dock Company ("Newport News"). As a result of this injury, Kea received temporary total disability benefits from April 7, 1995, to August 27, 1995, which were voluntarily paid by Newport News. On September 10, 1999, the District Director for the Office of Workers' Compensation Programs ("OWCP") issued a Compensation Order awarding Kea additional benefits in the amount of $1000, representing temporary partial disability benefits for the period from August 28, 1995, to December 31, 1998, as well as continued medical care. Newport News paid the final compensation payment for temporary disability benefits on September 15, 1999.

On September 17, 1999, Kea's counsel filed a letter with the District Director, along with a Form LS-203, "Employee's Claim for Compensation," J.A. 57a, alleging that he had also "sustained a *permanent* loss of wage earning capacity as a result of this injury," J.A. 57 (emphasis added). Kea requested that the letter be considered "a

request for additional compensation in modification of the previous award and *not* a request for the scheduling of an informal conference." J.A. 57. The LS-203 also indicated that Kea was pursuing permanent disability benefits.

On September 27, 1999, the District Director served Newport News with a "Notice to Employer and Insurance Carrier that Claim Has Been Filed," and enclosed a copy of Kea's claim for additional compensation. J.A. 59. The Notice informed Newport News that it "should proceed to pay compensation promptly when due" and "to furnish medical treatment" pursuant to the Act, "unless liability to pay compensation is controverted." J.A. 59. The Notice also advised Newport News that notice that the right to compensation is controverted must be filed within fourteen days. Newport News did not respond.

When Kea filed his letter requesting modification, he remained under the medical care of his treating physician, Dr. Alvin Bryant. Through counsel, he requested, on several occasions, that Dr. Bryant provide a medical opinion as to whether he had reached maximum medical improvement, as well as to the degree of permanent partial disability to his right leg. Dr. Bryant did not respond.

Eventually, Kea's attorney was replaced and, in April 2003, his new counsel was successful in obtaining the written opinion from Dr. Bryant assigning a permanent partial disability rating of 35% to Kea's right leg. Upon further inquiry, Dr. Bryant opined that Kea had reached maximum medical improvement from his leg injury in August 1996, but had experienced complications since then which had required ongoing medical attention. Shortly thereafter, Kea provided the permanent disability rating to Newport News and requested payment for permanent partial disability benefits under the Act. *See* 33 U.S.C.A. § 908(c) (West 2001). On May 14, 2003, Dr. Mark Ross performed an independent medical examination of Kea at the request of Newport News and assigned an impairment rating of 14% to Kea's right leg.

In August 2003, the parties executed a "Stipulation of Facts" regarding the April 6, 1995, injury. The document set forth the temporary total disability and temporary partial disability benefits paid to date, as well as a stipulation "[t]hat as a result of the injury the

employee has sustained permanent partial disability effective 04/07/03 equivalent to 14% loss of use of the right lower extremity" which, at Kea's compensation rate, amounted to $19,768.09. J.A. 65. The parties also agreed to "waive a formal hearing and consent to the issuance of a formal order." J.A. 65. However, Newport News advised the OWCP that it would not pay the stipulated amount because it believed the case to be "time barred due to [the] order entered by [OWCP] on 09/10/99." J.A. 63. For the same reason, Newport News sought to withdraw the "Stipulation of Facts."

The OWCP disagreed and informed Newport News that although a Compensation Order had been entered on September 10, 1999, Kea had filed an additional claim for benefits on September 17, 1999, which had been served upon Newport News ten days thereafter. Because a claim had been timely filed subsequent to the Compensation Order, OWCP informed Newport News that the claim for additional compensation was not barred by the one-year limitations period in 33 U.S.C.A. § 922. The parties were given until September 4, 2003, to notify OWCP "of any objection regarding the entry of an Order based on the August 15, 2003 stipulations." J.A. 61.

In response, Newport News asserted that Kea's letter was not a valid § 922 request for modification or for additional benefits, but rather amounted to a mere protective filing for future disability benefits prohibited by our decision in *I.T.O. Corp. of Va. v. Pettus*, 73 F.3d 523 (4th Cir. 1996). A request for formal adjudication of the dispute before an Administrative Law Judge ("ALJ") followed.

On January 18, 2005, the ALJ issued his Decision and Order denying additional benefits. The ALJ found that Kea's September 17, 1999, letter to the OWCP did not operate to toll the statute of limitations on a request for modification and, therefore, that Kea's request for additional compensation based on Dr. Bryant's impairment rating was untimely. The ALJ also denied Kea's request for reconsideration.

The Board affirmed on appeal. Although the Board concluded that the September 17, 1999, letter "state[d] a valid basis for modification, as claimant sought a specific type of compensation, *i.e.*, permanent partial disability benefits," the Board believed that it was required to deny the claim because "the relevant facts otherwise establish that

th[e] letter constitutes an anticipatory filing" of the type we disap-proved in *Pettus*. J.A. 171. In particular, the Board found it significant that Kea requested that an informal conference *not* be scheduled, which "belie[d] [an] intent to seek additional compensation" and "de-liberately halted the administrative process," and that he failed to "take any further action with regard to th[e] claim until he received the report of Dr. Bryant in April 2003." J.A. 171 (internal quotation marks omitted). The Board held that these "circumstances . . . estab-lish[ed] the absence of any actual intent to pursue modification at that time." J.A. 171.

## II.

On appeal, we review the Board's interpretation of the LHWCA de novo. Because the Board is not a policymaking agency, no deference is accorded its interpretations of the Act. *See Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 278 n.18 (1980).

## A.

The statutory provision for modifications of compensation awards is found at 33 U.S.C.A. § 922, and provides as follows:

> Upon his own initiative, or upon the application of any party in interest . . ., on the ground of a change in condition or because of a mistake in a determination of fact by the dep-uty commissioner, the deputy commissioner may, *at any time prior to one year after the date of the last payment of compensation*, whether or not a compensation order has been issued, or at any time prior to one year after the rejec-tion of a claim, review a compensation case. . . [and] issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

33 U.S.C.A. § 922 (emphasis added); *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 294-95 (1995). The standard for requesting a modification under § 922 is "most lenient." *Pettus*, 73 F.3d at 527. It "need not meet [any] formal criteria," so long as it is sufficient to

indicate a clear intention on the part of the claimant to seek further compensation and "to trigger review before the one-year limitations period expires." *Id.* at 526. At a minimum, "'there must be some basis for a reasonable person to conclude that a modification request has been made.'" *Greathouse v. Newport News Shipbuilding & Dry Dock Co.*, 146 F.3d 224, 226 (4th Cir. 1998) (quoting *Pettus*, 73 F.3d at 527). Thus, we have held that the modification request "must manifest an *actual* intention to seek compensation for a particular loss, and filings anticipating future losses are not sufficient to initiate § 922 review." *Id.* The request for benefits "is only the first step of review." *Pettus*, 73 F.3d at 526. As we noted in *Pettus*, "[s]ection 919 prescribes that '[w]ithin ten days after such claim is filed[,] the [district director] . . . shall notify the employer and any other person whom the [district director] considers an interested party, that a claim has been filed.'" *Id.* at 526-27 (quoting 33 U.S.C.A. § 919(b)). Upon notification of the claim, "the district director 'shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon.'" *Id.* at 527 (quoting 33 U.S.C.A. § 919(c)).

B.

In this case, the Board held that Kea's September 17, 1999, letter was a valid request for additional compensation in modification, but that the claim must nonetheless be denied because the letter constituted an "anticipatory filing" similar to those that we rejected in *Pettus* and *Greathouse*. We disagree.

In *Pettus*, the claimant's counsel sent two letters to the OWCP within the one year period after a compensation order was filed and the last payment made. The first letter "advised that I herewith make demand for *any and all benefits that may be due* the . . . claimant pursuant to the [LHWCA]." 73 F.3d at 525 (emphasis added). After a short period of additional temporary total disability, a second letter was sent stating, "[p]lease be advised that we herewith make claim for *any and all benefits my client may be entitled to* pursuant to the [LHWCA]," but failing to even report the additional period of temporary total disability. *Id.* "Neither letter . . . induced any action on the part of the district director." *Id.* at 527.

More than a year after the last payment had been made pursuant to the compensation order, the claimant obtained a physician's report documenting the intervening period of temporary total disability, sent the report to the OWCP, and requested an informal conference for the purpose of obtaining additional benefits. On appeal, we reversed the Board's determination that the letters constituted valid and timely requests for modification and remanded with instructions to deny the claim for additional benefits. We held that:

> Pettus' letters were too sparse to meet even this most lenient of standards. They made no reference to any change in claimant's condition, to a mistake of fact in the earlier order, to additional evidence concerning claimant's disability, to dissatisfaction with the earlier order, or to anything that would alert a reasonable person that the earlier compensation award might warrant modification. The letters thus failed to indicate any actual intention on the part of the claimant to seek compensation for a particular loss, a factor that is critical in assessing their sufficiency.

*Id.*

In *Greathouse*, we rejected a similar attempt to seek modification of a compensation order. There, we held that the filing of a physician's report which assigned an "expect[ed]" disability rating of 20% was insufficient to "manifest[ ] an intent by Greathouse that he was making a claim for additional compensation." *Id.* at 226. The report did not "facially indicate . . . [an] intent to request a modification to the original order" and "was submitted by [the employer] pursuant to a regulatory requirement to provide such reports" to OWCP. *Id.* Additionally, the report, which "state[d] that the doctor expects [claimant] to develop a 20% disability in the future," amounted to the type of anticipatory filing we had rejected in *Pettus. Id.* In short, "neither [the employer] nor the OWCP could have reasonably concluded that an official medical report confirming the 20% disability would indicate an intent by [claimant] to request further modification." *Id.*

In contrast to the anticipatory filings in *Pettus* and *Greathouse*, the September 17, 1999, letter filed by Kea's counsel was a valid request for additional compensation in modification of the award. The letter

clearly provided a "'basis for a reasonable person to conclude that a modification request ha[d] been made,'" *Greathouse*, 146 F.3d at 226 (quoting *Pettus*, 73 F.3d at 527), and "an *actual* intention to seek compensation for a particular loss," *id.*, *i.e.*, permanent partial disability benefits pursuant to 33 U.S.C.A. § 908.

First, the final payment of compensation was made to Kea on September 15, 1999, representing the balance of the *temporary* disability benefits due under the Compensation Order. In contrast to the filings in *Pettus* and *Greathouse*, the September 17, 1999, letter and accompanying Form LS-203 were filed by Kea's counsel a mere seven days after the award of *temporary* benefits was entered, and clearly notified the OWCP that Kea had also "sustained a *permanent* loss of wage earning capacity as a result of th[e] injury," and that OWCP should consider the letter "a request for additional compensation *in modification* of the previous award." J.A. 57 (emphasis added). Thus, we think it clearly "disclose[d] the requisite intent on the part of the writer to seek compensation for [a] *particular* loss or injury," *Pettus*, 73 F.3d at 527 (emphasis added), and was much more than the vague request to preserve a right to "any and all benefits" that might become due in the future that was filed in *Pettus*, *id.* at 525. The letter was also accompanied by a Form LS-203 which, while unnecessary to file with a modification request, should have left a reasonable person in no doubt that an additional "Claim for Compensation" was being made for "*permanent* disability" benefits. J.A. 57a (emphasis added).

In sum, Kea's September 17, 1999, filing with the OWCP was sufficient to request modification under § 922 of the Act, for the purpose of seeking the *permanent* partial disability benefits to which Kea was entitled under the Act. Kea's letter clearly placed the OWCP and Newport News on notice of the additional claim for *permanent* disability benefits under the Act. The OWCP treated the notice as a claim for additional benefits due under the Act and specifically advised Newport News of the claim for additional benefits and of the requirement that it controvert liability for such further benefits within fourteen days. Newport News did not respond.

Second, we think the Board placed too much emphasis upon Kea's request that an informal conference not be scheduled on the modification request and, in particular, upon the view that this failure to

request an informal conference evidenced an intent to preserve Kea's right to recover for an anticipated disability yet to occur. There is no requirement in the Act that an informal conference be sought or scheduled in conjunction with a request for modification. On the contrary, the Act contemplates that the Director of the OWCP will notify the employer that a claim has been filed, which was done in this case, and "make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon.'" *Id.* at 527 (quoting 33 U.S.C.A. § 919(c)). In addition, the evidence does not support a determination that the September 17, 1999, filing was made in anticipation of a future disability. Kea's filing conveys no intent to indefinitely preserve the right to obtain compensation for a disability that might occur in the future, nor will he ultimately obtain compensation for a permanent disability that did not exist when he filed his modification request. On the contrary, the Compensation Order rendered a final determination that Kea's *temporary* total disability had ended as of August 27, 1995, and reflected the parties' compromise agreement that Newport News would pay an additional $1000 for *temporary* partial disability for the period from August 28, 1995 to December 31, 1998. Given the severity of the injury and later stipulation that Kea had sustained a 14% *permanent* disability to his right leg from the work related injury, it seems everyone involved was or should have been aware that the issue of existing permanent disability remained to be resolved.

Stated simply, Kea is seeking benefits for permanent partial disability that existed as of the time he filed his valid request for modification, but which was not adjudicated in the prior Compensation Order and for which he had not obtained all of the evidentiary support needed. While we do not condone the lack of diligence on the part of Kea's prior counsel in obtaining a medical opinion that Kea had reached maximum medical improvement and suffered from a particular degree of permanent disability to his right leg as a result of the accident, or the lack of attention on the part of his treating physician in responding to the requests when made, this is not fatal to his claim. And, there is plenty of blame to go around. Within days of resolving the issue of temporary disability benefits due under the Act pursuant to the Order, Newport News was notified that Kea was seeking modification of the Order for the purpose of pursuing his entitlement to

permanent disability benefits as well, and was advised of its right to controvert further liability, but it did nothing. And, as candidly admitted by the OWCP's counsel at oral argument, the OWCP also failed to investigate and press adjudication of the matter. In short, after Kea's prior counsel timely filed his modification request preserving Kea's right to obtain benefits for the permanent disability that existed at the time, everyone dropped the ball. That is unfortunate, but it does not change the sufficiency of the modification request or render the request untimely.

### III.

For the foregoing reasons, we conclude that the Board erred in holding that Kea's § 922 modification request is time-barred and remand for further proceedings on the merits of the claim.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*