**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-2376**

NORTHROP GRUMMAN SHIPBUILDING INCORPORATED, f/k/a Newport
News Shipbuilding and Dry Dock Company,

            Petitioner,

        v.

JAMES KEA; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

            Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(BRB-0504)

Submitted:  November 19, 2009       Decided:  January 14, 2010

Before TRAXLER, Chief Judge, and SHEDD and DAVIS, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

Jonathan H. Walker, MASON, MASON, WALKER & HEDRICK, PC, Newport
News, Virginia, for Petitioner.  Gregory E. Camden, MONTAGNA
KLEIN CAMDEN, LLP, Norfolk, Virginia, for Respondent James Kea.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Northrop Grumman Shipbuilding, Inc., formerly known as Newport News Shipbuilding and Dry Dock Company (the "Employer"), petitions for review of the Decision and Order of the Benefits Review Board (the "Board"), affirming an Administrative Law Judge's (ALJ) award of permanent partial disability benefits to employee James Kea under § 908(c) of the Longshore and Harbor Workers' Compensation Act (the "Act"), 33 U.S.C.A. § 908(c) (West 2001).  For the following reasons, we affirm.

I.

On April 6, 1995, James Kea injured his right leg while working as a shipbuilder for the Employer.  The injury consisted of a serious laceration that resulted in neurological sensory and motor compromise, measurable atrophy of the leg, and limited range of motion.  Kea received an award of temporary total disability benefits from April 7, 1995, to August 27, 1995, and temporary partial disability benefits from August 28, 1995, to December 31, 1998.  Kea subsequently sought modification of his compensation award, alleging that he had also sustained a permanent loss of wage earning capacity as a result of the injury, entitling him to additional compensation in the form of permanent partial disability benefits under § 908(c) of the Act.

2

Dr. Alvin Bryant was Kea's treating physician, and the record contains a number of his treatment records. In April 2003, after an extended delay in obtaining his response to a request for an opinion on permanent disability resulting from the injury, Dr. Bryant assigned a permanent partial disability rating of 35% to Kea's right leg. In conjunction therewith, Dr. Bryant described the nature of the injury, including the accompanying injuries to the "veins, small arteries, fascia of muscles, and nerves in [Kea's] right lower leg," and the resulting permanent abnormalities, including neurological injuries, nodular fascitis, swelling, and abnormalities of gait. J.A. 46. Dr. Bryant also noted that Kea suffered from "severe motor sensory neuropathy" and had "clinical evidence of peripheral venus and arterial disease of his right lower leg which ha[d] exacerbated his injuries." J.A. 46.[*] Although Dr. Bryant described the injuries and the permanent disabilities resulting therefrom, he did not identify the specific source relied upon for determining the percentage of disability.

On May 14, 2003, Dr. Mark Ross performed an independent medical examination at the request of the Employer and assigned

---

[*] The record also contains a report of Dr. Mark M. Levy, opining that as of June 14, 1999, Kea suffered from "chronic pain syndrome in his right leg" and "recommend[ing] that he see rehabilitation doctors for what [would likely] be a chronic problem." J.A. 53.

an impairment rating of 14% to Kea's right leg pursuant to the American Medical Association's Guides to the Evaluation of Permanent Impairment. Dr. Ross noted that Kea's "situation [was] complicated by the fact that he has a severe sensorimotor peripheral neuropathy that represents the basis for the majority of his deficits." J.A. 9. Accordingly, Dr. Ross opined that "Mr. Kea's total impairments [were] higher than [14%]," but that these impairments were "primarily due to his diabetic neuropathy and not [to] the work related injury." J.A. 9.

In August 2003, the parties executed a Stipulation of Facts setting forth the temporary total disability and temporary partial disability benefits paid to date, as well as a stipulation that Kea had sustained permanent partial disability equivalent to 14% loss of use of the right lower extremity. However, the Employer subsequently sought to withdraw the stipulation and advised that it would not pay the stipulated amount because it believed Kea's request for additional benefits was time-barred. The ALJ agreed and denied additional benefits, and the Board affirmed. On appeal, we reversed the Board's denial of additional benefits as being time-barred and remanded for a determination of the merits of Kea's request for permanent partial disability benefits under the Act. See Kea v. Newport News Shipbuilding & Dry Dock Co., 488 F.3d 606, 613 (4th Cir. 2007).

4

On remand, the ALJ considered the disability ratings assigned by Dr. Bryant and Dr. Ross, and awarded permanent partial disability benefits based upon an impairment of 24.5% to the right leg, which also represented an average of the disability ratings assigned by the two physicians who had evaluated him.

With regard to Dr. Bryant, the ALJ observed that "Dr. Bryant found Claimant suffered from neurologic injuries, nodular fascitis, swelling and abnormalities of gait, all of which were related to the work related injury to his right leg," and assigned a 35% permanent disability rating to the right lower leg, but that Dr. Bryant had "not indicate[d] what source he relied upon to determine the percentage of disability." J.A. 104. However, the ALJ felt that "Dr. Bryant's opinion [was entitled to] additional weight because of [his] continued treatment" of Kea. Id. With regard to the evaluation performed by Dr. Ross, the ALJ observed that "Dr. Ross, in contrast [to Dr. Bryant], only saw Claimant on one occasion at the request of the Employer." Id. However, the ALJ felt that the thoroughness of Dr. Ross's opinion entitled it to "additional weight" as well. Id. Also, "[i]n contrast to Dr. Bryant, Dr. Ross was very clear as to the factors he considered in assessing the percentage of disability under AMA guidelines." Id.

5

Having considered and identified the relative strengths and weaknesses of the respective ratings assigned by the two physicians, the ALJ ultimately noted and accepted Kea's "suggest[ion] that the Court average the two ratings and assign [Kea] a disability rating of 24.5% based upon the two physicians' opinions." Id. "Based on the facts of th[e] case, and considering Dr. Bryant's status as a treating physician and the thoroughness of Dr. Ross's disability assessment," the ALJ explicitly found "this approach [to be a] reasonable one." Id. The Board affirmed, holding that the Employer had "not demonstrated error in the [ALJ's] decision to accord weight both to the opinion of Dr. Bryant based on his long-time treatment of the claimant, and to that of Dr. Ross on the basis that his examination was thorough and his explanation clear." J.A. 109 (citations omitted).

## II.

On appeal, we review the Board's decisions for errors of law and to ascertain whether the Board adhered to its statutorily mandated standard for reviewing the ALJ's factual findings. See Gilchrist v. Newport News Shipbuilding & Dry Dock Co., 135 F.3d 915, 918 (4th Cir. 1998); Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1991). Our review of legal questions "is de novo and no deference is accorded the [Board's]

6

legal interpretations." Gilchrist, 135 F.3d at 918. The factual findings of the ALJ must be affirmed if supported by substantial evidence. See 33 U.S.C.A. § 921(b)(3) (West 2001). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "On review, the ALJ's findings "may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir. 1988).

Here, the Employer asserts that Dr. Bryant's impairment rating of 35% was "wholly conclusory" and offered "without explanation," rendering it insufficient for consideration by the ALJ as matter of law. See Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co. (Carmines), 138 F.3d 134, 140 (4th Cir. 1998) ("[T]o be sufficient the evidence must be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The ALJ may not merely credulously accept the assertions of the parties or their representatives, but must examine the logic of their conclusions and evaluate the evidence upon which their conclusions are based." (internal quotation marks, citations and footnote omitted)). The Employer

also contends that the ALJ erred as a matter of law in affording any weight to Dr. Bryant's 35% impairment rating solely because he was Kea's treating physician. Finally, the Employer asserts that the ALJ erred as a matter of law by accepting Kea's suggestion that the two impairment ratings be averaged together and that, by doing so, the Board's decision was rendered without logical, rational or legal basis.

We disagree. First, we do not find Dr. Bryant's rating to be wholly conclusory or without explanation. On the contrary, Dr. Bryant explained that Kea's work-related injury involved injuries to Kea's "veins, small arteries, fascia of muscles and nerves" and that, as a result, Kea suffered from "neurologic injuries, nodular fascitis, swelling, . . . abnormalities of gait," "severe motor sensory neuropathy in th[e] right lower leg," and "peripheral venus and arterial disease of his right lower leg which ha[d] exacerbated his injuries." J.A. 46. Accordingly, while Dr. Bryant's opinion is not as detailed as Dr. Ross's report, or even as detailed as we might prefer, it falls far short of being a conclusory assignment of an impairment rating wholly devoid of basis. Second, the ALJ's decision did not afford weight to Dr. Bryant's impairment rating solely because he was the claimant's treating physician, nor did the ALJ credit his opinion to the exclusion of all other pertinent evidence. The ALJ gave Dr. Bryant's opinion

8

"additional," but not controlling, weight based upon Dr. Bryant's continued treatment. See Grigg v. Dir., OWCP, 28 F.3d 416, 420 (4th Cir. 1994) (noting that physician's "status as treating physician entitles his opinion to great, though not necessarily dispositive, weight"); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 533 (4th Cir. 1998) ("[A]n ALJ should not mechanistically credit, to the exclusion of all other testimony, the testimony of an examining or treating physician solely because the doctor personally examined the claimant.") (internal quotation marks and alteration omitted). In sum, Dr. Bryant's final opinion was not a conclusory one. And, while the ALJ may have legitimately criticized Dr. Bryant's failure to identify a specific source (such as the AMA Guides) for his disability assignment, the ALJ did not err in taking note of the medical basis that was articulated in Dr. Bryant's report or in giving Dr. Bryant's opinion additional weight based upon his long-term treatment of Kea.

Finally, we disagree with the contention that the ALJ's averaging of impairment ratings by evaluating and treating physicians indicates a baseless decision. On the contrary, the ALJ discussed the findings of both physicians, discussed the pros and cons of each, and explained when and why he specially credited one or the other. Ultimately, the ALJ made a finding of 24.5% disability based upon the facts of the case, which

9

included the specific findings of both Dr. Bryant and Dr. Ross, and concluded that averaging their assignments of disability was a reasonable approach to the evidence. It is well within the province of an ALJ to assign a disability award that is higher or lower than any disability rating suggested by any party. Dr. Bryant's opinion noted that Kea's injuries had been exacerbated by his "severe motor sensory neuropathy," as well as his "peripheral venus and arterial disease." J.A. 46. Likewise, Dr. Ross acknowledged that "Kea's total impairments [were] higher than [14%]," although this was, in his opinion, "primarily due to [Kea's] diabetic neuropathy and not the work related injury." J.A. 9. Under the circumstances, we cannot say that the ALJ's decision to award disability based upon a 24.5% permanent partial disability rating was arbitrary, unsupported by substantial evidence on the record, or otherwise erroneous as a matter of law simply because it also represented an average of the ratings assigned by the physicians who had evaluated Kea.

## III.

For the foregoing reasons, we affirm the decision of the Board. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

before the court and argument would not aid the decisional process.

AFFIRMED