**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONALD GILCHRIST,
Petitioner,

v.

NEWPORT NEWS SHIPBUILDING AND

DRY DOCK COMPANY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 97-1402

On Petition for Review of an Order
of the Benefits Review Board.
(94-2187, 96-659)

Argued: December 3, 1997

Decided: February 4, 1998

Before MOTZ, Circuit Judge, WILSON,
Chief United States District Judge for the
Western District of Virginia, sitting by designation, and
WILLIAMS, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Williams wrote the
opinion, in which Judge Motz and Chief Judge Wilson joined.

_____

**COUNSEL**

**ARGUED:** Matthew Harley Kraft, RUTTER & MONTAGNA,
L.L.P., Norfolk, Virginia, for Petitioner. Benjamin McMullan Mason,

MASON & MASON, P.C., Newport News, Virginia, for Respondents. **ON BRIEF:** John H. Klein, RUTTER & MONTAGNA, L.L.P., Norfolk, Virginia, for Petitioner.

_____

## OPINION

WILLIAMS, Senior District Judge:

Claimant-Petitioner Donald D. Gilchrist ("Gilchrist") appeals a decision of the Benefits Review Board ("BRB") awarding him compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 908(3), for a ten percent permanent partial impairment to each of his hands. Petitioner sought greater compensation based on his loss of wage earning capacity. The BRB affirmed the Administrative Law Judge's ("ALJ") initial Decision and Order, as well as the ALJ's Decision and Order on modification, finding that substantial evidence supported the ALJ's ultimate findings and denial of petitioner's claim for additional compensation. Because we agree with the ALJ and the BRB that the Supreme Court's decision in PEPCO v. Director, OWCP, 449 U.S. 268, 14 BRBS 363 (1980), precludes consideration of economic factors in the computation of disability under scheduled awards, we affirm the decision of the BRB.

I.

While working as a shipfitter for Newport News Shipbuilding and Dry Dock Co. ("Employer" or "Shipyard"), Donald D. Gilchrist sustained an injury to both of his hands when he slipped while climbing up a ladder on February 5, 1984. At the hearing before the ALJ, the parties stipulated to the following facts:

1. That the parties are subject to the jurisdiction of the Longshore Act;

2. That on February 15, 1984, Gilchrist was in the employ of Employer, which is self-insured;

2

3. That on said date Gilchrist, while performing duties as a shipfitter, sustained bilateral carpal tunnel syndrome arising out of and in the course of employment;

4. That written notice of the injury was given within thirty (30) days;

5. That Employer furnished Gilchrist with medical services in accordance with the provisions of Section 7 of the Act;

6. That, at the time of injury, Gilchrist had an average weekly wage of $374.91, which yields a compensation rate of $249.94;

7. That Gilchrist has been paid temporary total disability compensation from October 7, 1988 through December 11, 1988 and from March 13, 1989 through April 22, 1990;

8. That Gilchrist has been paid $15.25 per week in temporary partial disability compensation from July 31, 1986 through October 6, 1988;

9. That Gilchrist was temporarily and totally disabled from May 7, 1990 through June 11, 1990;

10. That Gilchrist was previously awarded compensation for a 10% permanent disability for loss of use of his right hand and 10% permanent disability for loss of use of his left hand.

Petitioner is a 38 year old former employee of Newport News Shipbuilding and Dry Dock. He began working at the Shipyard in May 1982 as a shipfitter in the pipe fitters department. He sustained a work related injury to both hands in February 1984 and was treated by Dr. Gwathmey who performed surgery on Gilchrist's left hand and assigned permanent restrictions. As a result, Gilchrist was unable to continue working as a shipfitter. Dr. Gwathmey found that Gilchrist

reached maximum medical improvement on June 12, 1990 with a 10% permanent partial disability in each hand.[1]

Following Gilchrist's February 15, 1984 injury, Gilchrist was out of work from October 7, 1988 through December 11, 1988; from March 13, 1989 through April 22, 1990; and from May 7, 1990 through June 11, 1990. At the same time, Gilchrist worked at the Shipyard under his light-duty restrictions from July 31, 1986 through October 6, 1988; and from December 12, 1988 through December 15, 1988. After reaching his maximum medical improvement, there was no longer any work available to him within his restrictions at the Shipyard and Gilchrist began to work with a vocational rehabilitation counselor from the Shipyard. In 1991 Gilchrist began to work as a part-time security guard with The Wackenhut Corporation which paid $4.25 per hour. Approximately six to eight months later Gilchrist left Wackenhut for a higher paying job at Lowe's Home Center, Inc. as a merchandise stocker. At the time of the ALJ hearing, he was employed at Lowe's, working approximately 35 hours per week at $6.25 per hour, yielding a weekly average of $218.75. Gilchrist continues to experience problems with his hands, including pain, numbness and stiffness. He wears braces on both hands and takes prescribed pain medication.

Gilchrist filed a claim for worker's compensation benefits under the provisions of the LHWCA. 33 U.S.C. § 901 et seq. On December 18, 1991, District Director B.E. Voultsides entered a Compensation Order - Award of Compensation, in which he awarded Gilchrist compensation under the schedule for a ten percent permanent partial disability to each hand. A formal hearing was held before Administrative Law Judge Malamphy in Newport News Virginia, on October 19, 1993. At the hearing Gilchrist sought a scheduled award for permanent partial disability based on his loss of wage earning capacity as opposed to an award based solely upon his physician's medical impairment ratings.

_____

[1] The Shipyard's medical notes of April 23, 1990 state that Gilchrist reached maximum medical improvement on April 23, 1990 and that there was no longer any work available to Gilchrist within his restrictions.

4

On March 10, 1994, Judge Malamphy issued a <u>Decision and Order Denying Greater Permanent Partial Disability Ratings for Either Hand</u> in which he denied Gilchrist's claim for disability benefits based on economic evidence, holding that Gilchrist was limited to the amount of benefits corresponding to his medical impairment ratings assigned by his treating physician under Section 8(c) of the LHWCA. Gilchrist filed a timely Notice of Appeal to the Benefits Review Board, and a request for modification with the ALJ. The Board subsequently remanded the case to the ALJ for modification proceedings. Judge Malamphy's January 31, 1996 <u>Decision and Order Denying Claimant's Petition for Modification of the Decision Issued on March 10, 1994</u> denied Gilchrist's petition for modification. Gilchrist appealed the matter to the Board. By Order dated March 25, 1996, the Board reinstated Gilchrist's prior appeal, BRB No. 94-2187, and consolidated it for purposes of decision with Gilchrist's appeal of the <u>Decision and Order</u> on modification, BRB 96-0659. The Board issued its <u>Decision and Order</u>, dated January 28, 1997, in which it affirmed the ALJ's initial <u>Decision and Order</u>, as well as the ALJ's <u>Decision and Order</u> on modification. Gilchrist filed a Petition for Review of the Board's Decision with this Court as of March 27, 1997.**2**

II.

At issue in this case is whether an administrative law judge under the LHWCA can consider loss of wage earning capacity when calculating a disability rating or is able to rely on the scheduled impairment rating set forth in the Act under 33 U.S.C. § 908(c)(3).

This Court must uphold the Benefits Review Board's decision concerning the administrative law judge's decision if the findings of the administrative law judge are supported by substantial evidence in the record as a whole, are rational, and are in accordance with the law. <u>Banks v. Chicago Grain Trimmers Ass'n</u>, 390 U.S. 459, 467 (1968); <u>O'Keeffe v. Smith, Hinchman & Grylls Associates</u>, 380 U.S. 359 (1965). On appeal, the decision of the Benefits Review Board is reviewed for errors of law and for adherence to the statutory standard set forth in section 921(b)(3). Such review is <u>de novo</u> and no defer-

_____

**2** Gilchrist filed an earlier appeal with this Court which was dismissed by Order dated February 12, 1997.

5

ence is accorded the BRB's legal interpretations of the Longshore Act. Coloma v. Director, OWCP, 897 F.2d 394, 397 (9th Cir. 1990).

In the case before this Court, the parties agree that Gilchrist has suffered a 10% permanent partial impairment of his hands and that Gilchrist was awarded compensation for a 10% permanent partial disability for loss of use of his right and left hands. The dispute in question is whether in calculating a disability rating, an administrative law judge can take into account the economic effects of that loss in assigning claimant's disability rating. Administrative Law Judge Malamphy held that he could not. He based his decision on Potomac Electric Power Co. v. Director, OWCP, 449 U.S. 268, 14 BRBS 363 (1980) ("PEPCO"), where the Supreme Court held that where a claimant is permanently partially disabled by an injury falling under the Section 8(c) schedule, he is limited to a schedule award and cannot seek a higher recovery under Section 8(c)(21). Gilchrist's injuries are specifically provided for in the schedule award Section 8(c)(3) which states under permanent partial disability,"Hand lost, two hundred and forty-four weeks' compensation." Therefore, the ALJ held that PEPCO was controlling in the case and additional compensation beyond the 10% disability could not be awarded. The ALJ declined to consider the economic effects of the loss of use of his right and left hands in assigning claimant's disability rating.

As articulated in PEPCO, compensation for a permanent partial disability must be determined in one of two ways. First, if the injury is of a kind specifically identified in the schedule set forth in §§ 8(c)(1)-(20) of the Act, 33 U.S.C. §§ 908(c)(1)-(20), the injured employee is entitled to receive two-thirds of his average weekly wages for a specific number of weeks, regardless of whether his earning capacity has actually been impaired. Second, in all other cases, § 8(c)(21), 33 U.S.C. § 908(c)(21), authorizes compensation equal to two-thirds of the difference between the employee's preinjury average weekly wages and his postinjury wage-earning capacity, during the period of his disability. 449 U.S. 268, 268 (1980). In PEPCO the claimant suffered a physical impairment of 5 to 20% loss of the use of one leg, but the resulting impairment of his earning capacity was apparently in excess of 40%. Id. at 271. Claimant's injury in that case was covered within the scheduled award of § 8(c) but claimant moved for a larger award measured by two-thirds of the difference between

6

his average weekly earnings before the injury and his subsequent wage-earning capacity, multiplied by the number of weeks that his disability continued.

The Supreme Court held in PEPCO that the plain language in the Act provided a compensation schedule for 20 different specific injuries. The additional subparagraph, § 8(c)(21) applied only to injuries not included within the list of specific injuries. It was not intended to provide an alternative method of compensation for the cases covered in the preceding paragraphs. Id. at 274. The Court held that these provisions were mutually exclusive and that injuries covered under the schedule award could not be pursued instead through§ 8(c)(21) in an effort to obtain a higher award based on economic loss.

Furthermore, the Supreme Court in PEPCO specifically rejected the argument that the anomalous results produced by requiring resort to the schedule permitted an alternate calculation."Unless an injury results in a scheduled disability, the employee's compensation is dependent upon proving a loss of wage-earning capacity; in contrast, even though a scheduled injury may have no actual effect on an employee's capacity to perform a particular job or to maintain a particular level of income, compensation in the schedule amount must be paid. Conversely, the schedule may seriously under compensate some employees . . . ." Id. at 283. The Supreme Court acknowledged the possibility of incongruous results but found that the compelling language of the statute produced them and could not be disregarded by the Court. It specifically invited Congress to review the statutory compensation schedule.

In the case before this Court, Gilchrist attempts to distinguish his argument from that which was rejected in PEPCO by claiming that he is not attempting to receive greater recovery under § 8(c)(21). Instead, Gilchrist argues that the ALJ properly failed to consider loss of wage earning capacity in translating Gilchrist's medical impairment into a disability rating under the schedule.

Although PEPCO does not address specifically Gilchrist's claim, as he is not seeking an alternative method of compensation calculation under § 8(c)(21), the substance of the opinion leads this Court to affirm the ALJ's opinion that PEPCO precludes in spirit the calcula-

7

tion method Gilchrist advocates. A contrary ruling would permit a claimant to benefit both from the presumptive disability period created by the schedule and from a demonstrated lower wage earning capacity like that required in § 8(c)(21), a result deliberately barred by the Supreme Court in PEPCO. In Gilchrist's case, had he been able to demonstrate no economic loss - i.e. finding alternative employment at comparable pay, he would still, according to the dicta in PEPCO be entitled to the same payment under the scheduled award assuming the same impairment.**3**

In the seventeen years since the PEPCO decision, Congress has not amended the statute in such a way as to correct the incongruous results in scheduled awards. In fact, amendments were made to the Act in 1984, changing both the means of calculation for loss of hearing under § 8(c)(13) and the means for reconsideration under § 8(c)(21). Despite the Claimant's suggestions that the amendment to § 8(c)(13) demonstrates congressional intent to distinguish "disability" from "impairment" except in situations where the statute deliberately equates them, the amendments instead evidence Congress' declination to grant recipients of scheduled awards greater relief for demonstrated economic loss. As has been previously observed, it is not to be lightly assumed that Congress intended that the LHWCA produce incongruous results. Baltimore & Phila. Steamboat Co. v. Norton, 284 U.S. 408, 412-413 (1932). In this case no other conclusion is permissible, however, where the Supreme Court has clearly spoken and the statute remains in pertinent part unmodified.

AFFIRMED

_____

**3** The unique nature of the scheduled awards was noted by Justice Blackmun in his dissent in PEPCO. Acknowledging that diminution in earning ability need not be demonstrated in order to be eligible for compensation under the schedule he wrote, "To this extent, the schedule is an exception to the principle that disability is an economic concept rather than a medical one, but it is an exception that Congress deliberately chose to make." PEPCO at FN5.

8