PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CERES MARINE TERMINALS,
INCORPORATED,

        *Petitioner,*

        v.

ROBERT GREEN; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

        *Respondents.*

No. 10-1122

On Petition for Review of an Order
of the Benefits Review Board.
(09-294)

Argued: May 12, 2011

Decided: September 6, 2011

Before DUNCAN and AGEE, Circuit Judges, and
David C. NORTON, Chief United States District Judge for
the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Chief District
Judge Norton wrote the opinion, in which Judge Duncan and
Judge Agee joined.

**COUNSEL**

Lawrence P. Postol, SEYFARTH SHAW LLP, Washington, D.C., for Petitioner. Gregory E. Camden, MONTAGNA KLEIN CAMDEN, LLP, Norfolk, Virginia, for Respondents.

---

**OPINION**

NORTON, Chief District Judge:

Petitioner Ceres Marine Terminals, Inc. ("Ceres") appeals the decision of the United States Department of Labor's Benefits Review Board ("BRB") affirming an administrative law judge's ("ALJ's") award of disability benefits, two hearing aids, and attorney's fees to respondent Robert Green ("Green") pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950. Ceres contends that the ALJ contravened United States Supreme Court precedent by failing to adhere to the burden of proof as established in *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). We agree with Ceres. For the reasons set forth below, we reverse the BRB's decision and remand for further action consistent with this opinion.

I.

When he appeared before the ALJ on June 4, 2008, Green was fifty-nine years old and had been a member of the International Longshoremen's Association for twenty-three years. He testified that he was exposed to a variety of loud noises while working for Ceres. In 2007, Green's job entailed removing and installing cargo container "shoes," which are twist locks that fasten one container to another on a cargo ship. J.A. 42-43. Green stated that when the port crane unloads containers from a cargo ship, it frequently slams the containers onto the waiting truck chassis below, sometimes as

often as 300-400 times in an eight-hour shift. Green's job required him to stand near the truck chassis so he could tend to the "shoes." In addition, Green testified that he was exposed to noise from the crane when it removed hatch covers from ships and from diesel forklifts. He said that he worked next to, and "almost underneath," the crane, and he drove diesel forklifts, on and off, for more than twenty years. J.A. 45-46. While he never wore hearing protection while working at the dock, he sometimes put cotton in his ears if the noise was particularly loud.

Green testified that he had his hearing checked at the suggestion of his wife and some of her friends. Joseph Gillespie, a licensed and board-certified audiologist with fifteen years of experience, performed a comprehensive audiological evaluation of Green on July 11, 2007. The evaluation reflected that Green suffered from a 45 db hearing loss in his left ear at the 4,000 Hz frequency. Mr. Gillespie noted that this type of loss is significant because the sounds of "the S's and F's and K's and TH's" are produced in the 3,000 to 4,000 Hz frequency range. J.A. 146. Mr. Gillespie reported "slight to mild sensorineural hearing loss, with the left ear worse than the right" and concluded that the hearing loss was consistent with exposure to noise. J.A. 115. Mr. Gillespie determined that Green suffered from a 3.75% binaural hearing loss.

During his deposition on May 7, 2008, Mr. Gillespie testified that he discussed various hearing aid options with Green based on his lifestyle, explaining the advantages and disadvantages of each option. Ultimately, Mr. Gillespie recommended that Green use Widex Inteo in-the-ear hearing aids, at a cost of $6,500 per pair. Green subsequently filed a disability claim with his employer, Ceres, pursuant to the LHWCA. Ceres denied the claim.

After being retained by Ceres, on November 8, 2007, Stuart Cohen, a licensed and board-certified audiologist with thirty-three years of experience, tested Green's hearing. The test

performed by Mr. Cohen resulted in a finding of 0% binaural hearing impairment. Despite this finding, Mr. Cohen reported that Green had "mild to moderate, bilateral, sensorineural hearing loss" and recommended that Green use the Phonak UNA MAZ behind-the-ear hearing aid because it reduces the "'voice-in-the-barrel' affect commonly reported by hearing aid users," and "accentuates high frequency gain where the claimant needs amplification the most." J.A. 111. The Phonak hearing aids cost $2,500 per pair. During his deposition on May 7, 2008, Mr. Cohen qualified his November 8, 2007 report, stating that he would only recommend a hearing aid for Green's left ear. Mr. Cohen testified that he would not recommend a hearing aid for Green's right ear because his "hearing [in that ear] is essentially normal at all but one frequency," and Mr. Cohen does not prescribe hearing aids for that type of hearing loss. J.A. 96.

When asked about the reliability of the two tests, Mr. Gillespie testified that for two audiograms to be within "good reliability," there should be no more than 5 db difference between the tests. J.A. 122. The tests showed differences of more than 5 db at 500 Hz (both ears), 2000 Hz (left ear), and 3000 Hz (right ear). The tests also resulted in different speech discrimination scores. Mr. Cohen's test reflected a speech discrimination score of 100% in both ears, but Mr. Gillespie's test resulted in a score of 100% in the right ear and 92% in the left. Mr. Gillespie testified that the differences in the test results did not appear to be caused by a problem with either test. He opined that the differences may have been caused by either (1) Green's inattentiveness during the test, or (2) the presence of a cold or other medical condition, which could have affected his middle ear pressures. Mr. Gillespie recommended that Green get a third opinion to resolve the discrepancies between the two tests; however, Green did not do so.

Mr. Cohen testified that a variation of 5 db is the accepted outer limit of "test/retest variability." J.A. 80. He also testified that audiogram results should not vary significantly because

the equipment used by all audiologists should be calibrated to American National Standards Institute ("ANSI") standards.

The formal hearing before the ALJ was held in Charleston, South Carolina, on June 4, 2008. The ALJ found that the audiograms conducted by Mr. Gillespie and Mr. Cohen were both credible and "entitled to equal probative value." J.A. 22. Although citing to *Greenwich Collieries* for the rule that Green had the burden of proof, the ALJ held that if more than one credible audiogram exists (even though one showed no compensable hearing loss), it was within his authority to average the results of two audiograms to determine the amount of hearing loss, citing *Steevens v. Umpqua River Navigation*, 35 Ben. Rev. Bd. Serv. (MB) 129, 133 (2001), as his authority to do so. The ALJ then found that as both tests were entitled to "equal probative value," Green was entitled to disability benefits for a 1.875% binaural hearing loss. J.A. 22. The ALJ also found that "there is no medical justification for refusing to utilize a less expensive, but equally functional, hearing aid." J.A. 24. Accordingly, he ordered Ceres to pay for all of Green's reasonable and necessary medical expenses arising from his hearing loss disability, including the cost of batteries and a maximum of $3,000 for the two Phonak hearing aids initially recommended by Mr. Cohen. J.A. 24. The ALJ later awarded attorney's fees to Green in the amount of $10,390.10.[1]

Ceres appealed the ALJ's decision to the BRB. On January 12, 2010, the BRB issued its decision and order, affirming the decision of the ALJ. The BRB held that an ALJ "may average the results of reliable audiograms to determine the extent of a claimant's hearing loss, thus affording an administrative law judge the discretion to determine the weight to be accorded to the evidence of record." J.A. 4 (citing *Steevens*, 35 Ben. Rev. Bd. Serv. (MB) at 129). Specifically on point for the issue in this case, the BRB held that "[t]he decision in *Greenwich Col-*

---

[1]Title 33 U.S.C. § 928 provides for the award of attorney's fees when a claim is successfully prosecuted under the LHWCA.

*lieries* does not preclude the administrative law judge from averaging impairment ratings where he finds audiograms to be equally probative." J.A. 4. Ceres timely appealed the BRB decision to this court pursuant to 33 U.S.C. § 921(c).

Ceres argues that the decision of the BRB should be reversed and the award of disability benefits, hearing aids, and attorney's fees vacated because "the Claimant did not carry his burden of proof" as a matter of law. Appellant's Br. 20. Citing *Greenwich Collieries*, Ceres asserts that when evidence submitted by opposing parties is considered equally probative, the claimant must lose because he bears the burden of proof. Next, Ceres argues that the ALJ's decision is not supported by substantial evidence because Mr. Gillespie admitted that respondent may have been inattentive or had a cold when he was tested, and recovery under the LHWCA, 33 U.S.C. § 908(c)(13), requires substantial evidence of permanent hearing loss. Finally, Ceres argues that the ALJ's decision to average the two audiograms encourages workers' compensation benefits seekers to obtain inaccurate test results in an effort to receive benefits.

In his response brief, Green argues that the ALJ did not err in averaging the two audiograms because both were credible, entitled to equal probative value, and showed that both audiologists diagnosed Green with a hearing impairment requiring hearing aids. Green argues that he has met the burden of proof that his hearing loss was work-related, and if a dispute exists, it is a dispute as to the amount of benefits owed, not whether he is entitled to benefits. Green argues that *Greenwich Collieries* does not preclude an ALJ from averaging hearing impairment scores if both are equally probative and BRB precedent firmly supports this practice.

Green also cites the recent unpublished Fourth Circuit case of *Northrop Grumman Shipbuilding v. Kea*, No. 08-2376, 2010 WL 148349 (4th Cir. Jan. 14, 2010), which affirmed an ALJ's decision to average leg impairment ratings submitted

by two doctors. Green asserts that the ALJ is not generally required to accept the lowest audiogram score and the ALJ's decision to average the two scores was rational, supported by substantial evidence in the record, and based on a credibility determination that cannot be properly called into question by this court.

## II.

We review BRB decisions "for errors of law and to ascertain whether the Board adhered to its statutorily mandated standard for reviewing the ALJ's factual findings." *Newport News Shipbuilding & Dry Dock Co. v. Riley*, 262 F.3d 227, 231 (4th Cir. 2001) (citing *Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998)). "The factual findings of the ALJ must be affirmed if supported by substantial evidence." *Id.* (citing 33 U.S.C. § 921(b)(3)). "Review of legal questions is de novo, and no deference is due to the Board's legal conclusions." *Id.* (citing *Gilchrist*, 135 F.3d at 918).

"The Supreme Court has defined 'substantial evidence' to mean 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *USCOC of Va. RSA #3 v. Montgomery Cnty. Bd. of Sup'rs*, 343 F.3d 262, 271 (4th Cir. 2003) (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951)). "It requires more than a mere scintilla but less than a preponderance." *Id.* (citing *360° Commc'ns Co. v. Bd. of Sup'rs of Albemarle Cnty.*, 211 F.3d 79, 83 (4th Cir. 2000)). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera*, 340 U.S. at 488. However, "[o]n review, the ALJ's findings may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given to the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." *Newport News Shipbuilding & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988) (citing *New-*

*port News Shipbuilding & Dry Dock Co. v. Dir., OWCP*, 681 F.2d 938, 941 (4th Cir. 1982)).

### III.

As a preliminary matter, the court expresses concern as to whether the ALJ's determination that the audiograms were "equally probative" was supported by substantial evidence. Despite the finding that "[n]either party [had] convincingly shown that the other side's audiogram was flawed," J.A. 21, Mr. Gillespie, Green's own audiologist, conceded that the two audiogram results failed to demonstrate "good reliability" because they were not within 5 db of each other. J.A. 122. Mr. Gillespie admitted that the lower of the two test results—Mr. Cohen's finding of 0% binaural hearing loss—may be correct, or that Green may have suffered from a temporary medical condition which caused the discrepancy in the two test results. Recognizing these possibilities, Mr. Gillespie recommended that Green undergo a third audiogram, advice Green failed to follow. It is thus difficult for the court to find that substantial evidence supported the ALJ's conclusion that the audiograms were "equally probative."

However, even if we assume without deciding that the ALJ was justified in finding the two sides' evidence equally probative, Green's claim faces another insurmountable hurdle. Ceres also argues that in light of the Supreme Court's holding in *Greenwich Collieries*, the ALJ erred by making an award of binaural hearing loss disability benefits upon finding that the evidence for and against an award was "equally probative." This is purely a question of law which the court must review de novo.

In *Greenwich Collieries*, the Court reviewed two separate decisions of the United States Court of Appeals for the Third Circuit. The first involved a claim under the Black Lung Benefits Act ("BLBA"), and the second—the decision relevant to the instant case—involved a claim made under the LHWCA.

The issue presented by both cases was whether the "true doubt" rule, which shifts the burden of persuasion to the party opposing a benefits claim and grants benefits to a claimant if the evidence is equally balanced, was inconsistent with § 7(c) of the Administrative Procedure Act ("APA"). 512 U.S. at 270. Section 7(c) "states that '[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof.'" *Id.* at 269 (quoting 5 U.S.C. § 556(d)). After discussing the facts of the BLBA claim, the Supreme Court summarized the factual and procedural history of the LHWCA claim:

> Michael Santoro suffered a work-related back and neck injury while employed by respondent Maher Terminals. Within a few months Santoro was diagnosed with nerve cancer, and he died shortly thereafter. His widow filed a claim under the LHWCA alleging that the work injury had rendered her husband disabled and caused his death. After reviewing the evidence for both sides, the ALJ found it equally probative and, relying on the true doubt rule, awarded benefits to the claimant. The Board affirmed, finding no error in the ALJ's analysis or his application of the true doubt rule. The Court of Appeals reversed, holding that the true doubt rule is inconsistent with § 7(c) of the APA.

*Greenwich Collieries*, 512 U.S. at 270. The Court granted certiorari to resolve the conflict between the "true doubt" rule and § 7(c).

As a threshold matter, the Court ruled that § 7(c) applies to the LHWCA. *Id.* at 271. The Court then discussed at length whether the "burden of proof" mentioned in § 7(c) refers to the burden of persuasion or the burden of production. *Id.* at 272-80. The Court decided that the "burden of proof" refers to the burden of persuasion and held that "the true doubt rule violates § 7(c) of the APA." *Id.* at 281. Thus, "when the evidence is evenly balanced, the benefits claimant must lose." *Id.*

This court recognized the impact of *Greenwich Collieries* in *Lemaster v. Imperial Colliery Co.*, No. 94-2657, 1995 WL 764227 (4th Cir. Dec. 28, 1995). In that case, we held that the ALJ must adhere to the Court's mandate in *Greenwich Collieries* when considering conflicting X-ray evidence in a BLBA claim on remand. *Id.* at *2 ("If on remand the ALJ concludes that the evidence is in equipoise, benefits must be denied.") (citing *Greenwich Collieries v. Dir., OWCP*, 990 F.2d 730, 737 (3d Cir. 1993), *aff'd*, 512 U.S. 267 (1994)).

The ALJ and BRB briefly acknowledged *Greenwich Collieries* in their decisions and orders; however, they summarily dismissed its application to the instant case and chose to rely instead on prior BRB and ALJ decisions. Specifically, they both cited *Steevens*, and the ALJ cited *J.C. v. Atlantic Technical Services*, 41 Ben. Rev. Bd. Serv. (MB) 181 (2007). Both of these decisions proclaim that an ALJ has the authority to average test results to determine the extent of a claimant's disability.

We find the ALJ's and BRB's reliance on *Steevens* and *J.C.* unavailing. *Greenwich Collieries* compels us to conclude that Green failed to meet his burden of proof to establish disability, even if we accept that the evidence refuting and confirming hearing loss was in equipoise. The Supreme Court made this point abundantly clear: "[W]hen the evidence is evenly balanced, the benefits claimant must lose." *Greenwich Collieries*, 512 U.S. at 281. Because Green failed to carry the burden of proof allocated to him, his claim failed as a matter of law.

We also find Green's reliance on *Northrop Grumman* unavailing, for several reasons. Preliminarily, of course, it is an unpublished, nonprecedential decision which could not contravene the holding of the Supreme Court in *Greenwich Collieries*. Moreover, two factors make *Northrop Grumman* distinguishable. First, there was no finding in *Northrop Grumman* that the competing evidence was in equipoise. Rather,

the ALJ in that case chose to credit each doctor's assessment of the plaintiff's level of disability for different reasons after explaining each one's pros and cons. *See Northrop Grumman*, 2010 WL 148349, at \*4. Second, the ALJ there was not faced with two tests that contradicted each other as to whether a disability existed at all, but simply had to determine the level of disability. Here, by contrast, Green fails to meet the threshold requirement of establishing disability—a requirement for which *Greenwich Collieries* places the burden of proof on his shoulders.[2] *Northrop Grumman*, therefore, does not strengthen Green's argument.

The BRB committed a clear error of law when it affirmed the ALJ's decision and order, relying on its own precedent rather than the controlling law set forth by the Supreme Court in *Greenwich Collieries*. Once the unchallenged finding was made by the ALJ that the evidence was "equally probative," the claimant failed to meet his burden of proof as a matter of law and his claim for binaural hearing loss benefits should have been denied. The contrary actions by the ALJ and the BRB were thus clear error. *See Mann v. Director, OWCP*, No. 96-9509, 1997 WL 57092, at \*3 (10th Cir. Feb. 11, 1997).[3]

For the reasons set forth above, the BRB decision is reversed, the current award of disability benefits, two hearing aids, and attorney's fees is vacated, and the case is remanded to the ALJ only as to the limited issue of the award of attorney's fees.[4]

*REVERSED AND REMANDED*

---

[2]In other words, we do not take the position that an ALJ can never average evidence presented by two medical professionals to make a determination as to the extent of disability. We simply hold that when there is contradictory, equally probative evidence as to whether a disability exists at all, an ALJ cannot average a "zero" result with a higher result to find that a disability exists.

[3]Because we reverse the BRB decision due to Green's failure to meet his burden of proof, we do not address the other arguments raised by Appellant.

[4]Appellant has conceded that it agreed to furnish Green a single left ear Phonak hearing aid. The only issue on remand is what attorney's fees, if any, Green is entitled to receive based on the receipt of that hearing aid.