**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1594

STEVEN LINCOLN,

                    Petitioner,

          v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; CERES MARINE TERMINALS, INC.,

                    Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(12-0418)

Argued:  January 28, 2014          Decided:  March 11, 2014

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

Petition denied by published opinion.  Judge Wilkinson wrote the
opinion, in which Judge Keenan and Judge Diaz joined.

Gregory Edward Camden, MONTAGNA, KLEIN, CAMDEN, LLP, Norfolk,
Virginia, for Petitioner.  Lawrence Philip Postol, SEYFARTH
SHAW, LLP, Washington, D.C., for Respondent Ceres Marine
Terminals, Inc.

WILKINSON, Circuit Judge:

Petitioner Steven Lincoln seeks attorney's fees from Ceres Marine Terminals, Inc. (Ceres) for his pursuit of a claim for disability benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA). Lincoln contends that he is entitled to attorney's fees because Ceres did not pay "any compensation" within the meaning of the fee-shifting mechanism in 33 U.S.C. § 928(a) or, in the alternative, because Ceres's notice of controversion irrevocably triggered the same provision. We reject his arguments and deny his petition.

I.

A.

On May 24, 2011, Lincoln filed a claim with the District Director of the Office of Workers' Compensation Programs (OWCP) for benefits under the LHWCA, alleging that he had sustained binaural hearing loss (hearing loss in both ears) as a result of his work as a longshoreman in Charleston, South Carolina. The basis of Lincoln's claim was an April 11, 2011 audiogram. Lincoln, like many longshoremen, worked for several different companies over the course of his career, but he alleged that he was employed by Ceres at the time of his injury. Therefore, on May 26, Ceres responded by filing forms with the OWCP, one of which was a notice of controversion.

2

In the notice, Ceres explained that it was controverting Lincoln's claim because, while it accepted the fact that "claimant's hearing loss [was] noise-induced," J.A. 5, additional information was needed before Ceres could determine what it believed was the correct disability payment. The information Ceres sought included whether Ceres was the last employer before Lincoln's audiogram and the amount of Lincoln's average weekly wage (calculated from wage records collected from the various employers for which Lincoln had worked). On June 2, Lincoln gave Ceres a copy of his April 11 audiogram along with a paystub from his time working for Ceres. Several days later, on June 6, Ceres submitted subpoenas requesting wage records from the other companies for which Lincoln had worked and medical records from the doctor who had conducted Lincoln's April 11 audiogram.

The OWCP formally served notice of Lincoln's claim on Ceres on June 14. After receiving the official notice of the claim, on July 7, Ceres "voluntarily paid" Lincoln $1,256.84, amounting to compensation for "0.5% [binaural] hearing loss" and the equivalent of one week of permanent partial disability pay under the maximum compensation rate. J.A. 25. Ceres also requested that Lincoln submit to an independent medical examination. In accordance with that request, Lincoln completed a second

3

audiogram on July 15 that demonstrated he had sustained a 10% binaural hearing loss.

On October 4, after negotiations, the District Director of the OWCP entered a settlement compensation order agreed to by both Lincoln and Ceres. The settlement acknowledged that Lincoln allegedly sustained a 10% binaural hearing loss and awarded benefits to Lincoln totaling $23,879.96 in compensation and $4,000 in medical benefits. Ceres did not pay any money to Lincoln between the July 7 disability payment and the October 4 settlement.

B.

Lincoln filed a petition with the OWCP on August 18, 2011, requesting that the Director award him $3,460 in attorney's fees under § 928(a) of the LHWCA, which shifts fees from a successful claimant to the employer when the employer "declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim." 33 U.S.C. § 928(a). Ceres opposed the petition, and on April 24, 2012, the Director notified both parties that, because Ceres had paid Lincoln one week's worth of disability benefits within 30 days of receiving official notice of his claim, it was not liable for Lincoln's attorney's fees under § 928(a). He also found that Ceres was not liable for attorney's fees under § 928(b), the LHWCA's alternative fee-shifting provision.

On May 15, 2012, the Director entered a Compensation Order ruling Ceres not liable for Lincoln's attorney's fees and denying the petition. Lincoln appealed to the Benefits Review Board (BRB), which found that the Director acted within his discretion in denying Lincoln's petition under §§ 928(a) and (b). Lincoln thereafter filed this timely petition for review.

## II.

Lincoln maintains that the Director erred in denying his fee petition under § 928(a) for three independent reasons: (1) Ceres's July 7 payment was only a partial payment and thus not "any compensation"; (2) the payment did not technically constitute "compensation" for the purposes of that provision; and (3) Ceres's notice of controversion automatically triggered fee-shifting. We review the BRB's decision both for errors of law and to determine whether it properly found that the District Director's relevant factual findings were supported by substantial evidence. Sidwell v. Va. Int'l Terminals, Inc., 372 F.3d 238, 241 (4th Cir. 2004). Our review of the BRB's interpretation of the LHWCA is de novo. Wheeler v. Newport News Shipbuilding & Dry Dock Co., 637 F.3d 280, 283 (4th Cir. 2011).

## A.

Lincoln first claims that the term "any compensation" in § 928(a) means all compensation due, and therefore cannot

5

include Ceres's payment of a mere one week of disability benefits to Lincoln. To interpret this provision, we begin by examining the statutory text. If the language is plain, "we apply it according to its terms." Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir. 2004) (internal quotation marks omitted). When determining whether or not statutory language is plain, we consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Holland v. Big River Minerals Corp., 181 F.3d 597, 603 (4th Cir. 1999) (internal quotation marks omitted).

The LHWCA establishes a reticulated scheme providing for fee-shifting in two specific contexts. "In all other cases any claim for legal services shall not be assessed against the employer or carrier." 33 U.S.C. § 928(b). Section 928(a) covers the first of these situations:

> If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier . . . .

33 U.S.C. § 928(a).

6

In Lincoln's view, the phrase "any compensation" means "all compensation," to the effect that an employer that fails to pay the entire claim within 30 days is liable for attorney's fees under § 928(a). We do not agree. The term "any compensation" is unambiguous and plainly encompasses an employer's partial payment of compensation. Thus, the most natural reading of the provision is that an employer that pays the claimant something by way of compensation is not liable for attorney's fees.

The surrounding context of § 928(a) buttresses this interpretation. It states that the employer's refusal to pay must be "on the ground that there is no liability for compensation within the provisions of this chapter." 33 U.S.C. § 928(a). This language is unequivocal, and demonstrates that an employer's refusal to pay compensation must be absolute in order for it to face possible fee liability under § 928(a).

To construe "any compensation" in § 928(a) as "all compensation" would mean that employers must pay the full claim within 30 days of receiving the official notice to avoid potential fee liability. But, as Lincoln's claim demonstrates, the medical evidence establishing the extent of the claimant's injury, and thus the amount of his benefits, is often in flux and cannot be ascertained with any degree of certainty within 30 days of his claim. Section 928 provides an employer a safe harbor: if it admits liability for the claim by paying some

7

compensation to the claimant for a work-related injury and only contests the total amount of the benefits, it is sheltered from fee liability under § 928(a). Andrepont v. Murphy Exploration & Prod. Co., 566 F.3d 415, 418-19 (5th Cir. 2009); Day v. James Marine, Inc., 518 F.3d 411, 419 (6th Cir. 2008). Therefore, fee-shifting under § 928(a) may not occur if the employer agrees that some amount is due the claimant for a work-related injury and "tenders any compensation." Andrepont, 566 F.3d at 418. This safe harbor provision serves to protect "the employers' interest in having their contingent liabilities identified as precisely and as early as possible." Brown, 376 F.3d at 250 (internal quotation marks omitted).

But the safe harbor is not permanently safe, because § 928(b) provides a mechanism by which the claimant could still recover attorney's fees. Andrepont, 566 F.3d at 419 (finding that § 928(b) applies when "the employer and claimant agree that some compensation is due but disagree as to what amount") (internal quotation marks omitted); Va. Int'l Terminals, Inc. v. Edwards, 398 F.3d 313, 317-18 (4th Cir. 2005). This alternative provision is only operative when "the employer initially pays voluntary compensation and a subsequent dispute arises about total amount of compensation due" and, additionally, four requirements are satisfied. Id. at 316. These requirements are: "(1) an informal conference, (2) a written recommendation

8

from the deputy or Board, (3) the employer's refusal to adopt the written recommendation, and (4) the employee's procuring of the services of a lawyer to achieve a greater award than what the employer was willing to pay after the written recommendation." Newport News Shipbuilding & Dry Dock Co. v. Dir., OWCP, 477 F.3d 123, 126 (4th Cir. 2007) (internal quotation marks omitted).

When taken together, §§ 928(a) and (b) mandate fee-shifting in certain defined circumstances, but plainly do "not provide for attorneys' fee awards in every case in which the claimant is successful." Andrepont, 566 F.3d at 420 (internal quotation marks omitted). This interpretation is consistent with the purposes of the LHWCA, one of which is to lessen the occasions where attorney's fees are incurred by encouraging claimants to resolve their disputes "without the necessity of relying on assistance other than that provided by the Secretary of Labor." Kemp v. Newport News Shipbuilding & Dry Dock Co., 805 F.2d 1152, 1153 (4th Cir. 1986) (per curiam). Therefore, the structure of § 928 establishes that, until the claimant has exhausted the non-adversarial avenues for resolving his claim, he cannot avail himself of the fee-shifting provisions. Day, 518 F.3d at 416-17.

In sum, § 928(a)'s plain language requires fee-shifting only when an employer has paid no compensation within 30 days of

9

receiving the official claim. Applying this interpretation to Lincoln's case shows that his claim under § 928(a) fails. Ceres voluntarily paid Lincoln one week's compensation on July 7, which was within 30 days of receiving his claim, "thereby admitting to liability for the injury" for the purposes of § 928(a). Andrepont, 566 F.3d at 419. Ceres met the requirement of § 928(a), moving the dispute to § 928(b). Lincoln then had the right to request an informal conference, see Pittsburgh & Conneaut Dock Co. v. Dir., OWCP, 473 F.3d 253, 264 (6th Cir. 2007), but he did not and instead proceeded to settlement negotiations that ultimately produced an agreement. Lincoln was entitled to the services of an attorney but, under the LHWCA's fee-shifting scheme, he is not entitled to have that attorney paid for by Ceres.

B.

Lincoln's second contention is that Ceres's July 7 payment was not "compensation" in any true sense under § 928(a) because it was merely an attempt by Ceres to avoid fee liability. To support his argument, he relies on Green v. Ceres Marine Terminals, Inc., 43 BRBS 173 (2010), rev'd on other grounds, 656 F.3d 235 (4th Cir. 2011). In Green, the BRB reviewed a ruling by an administrative law judge (ALJ) finding that the employer's $1 payment to the claimant did not constitute "compensation" for the purposes of § 928(a). Id. at 177. The BRB affirmed and

10

found § 928(a) applicable because the ALJ "rationally found that employer's payment of $1 was merely an attempt to avoid fee liability rather than the payment of compensation for claimant's injury." Id.

Lincoln contends that Ceres's payment of $1,256.84, corresponding to an injury of 0.5% binaural hearing loss, constitutes a "farce to avoid paying attorney's fees" in the same vein as in Green. Appellant's Br. at 10. However, Lincoln's case differs dramatically from Green, and we consequently do not find it applicable here. Ceres's counsel noted at oral argument that Ceres based its calculation of the July 7 payment on Lincoln's alleged disability. That is in stark contrast to the $1 payment in Green, which was clearly untethered to the underlying claim and therefore was not "compensation" at all. See Andrepont, 566 F.3d at 419 (holding that an employer's partial benefits payment constituted "compensation" under § 928(a)); Pittsburgh & Conneaut Dock Co., 473 F.3d at 263-64 (ruling that an employer's initial payments of temporary disability benefits were sufficient to meet § 928(a)'s "compensation" requirement).[*]

---

[*] We likewise find unavailing Lincoln's reference to Roberts v. Sea-Land Services, Inc., 132 S. Ct. 1350 (2012). Nowhere in Roberts did the Supreme Court analyze the meaning of "any compensation" in § 928(a), the central issue in this case.

11

We hold that Ceres's payment of one week's benefits at the maximum compensation rate, being directly tied as it was to Lincoln's alleged injury, qualifies as "compensation" within the meaning of § 928(a).

C.

Lastly, Lincoln maintains that, when Ceres filed a notice of controversion prior to the July 7 payment, it signaled that it was controverting his claim and, by doing so, irrevocably triggered § 928(a). Lincoln cites to the controversion procedure in § 914(d) of the LHWCA, which requires that an employer seeking to challenge an employee's benefits claim file a notice "on or before the fourteenth day after [it] has knowledge of the alleged injury or death." 33 U.S.C. § 914(d).

Lincoln did not raise this issue before the BRB, and thus the BRB did not have the opportunity to consider or rule on it. But even if we were to address the merits of his claim, we would find it wanting. Section 928(a) nowhere incorporates § 914(d) or its 14 day time limit specifically, or references notices of controversion generally. Rather, § 928(a) contains only one explicit trigger: the payment of "any compensation" within 30 days of the employer's receipt of official notice of the claim. Ceres met this requirement and consequently was entitled to the protections afford by § 928(a).

12

III.

The LHWCA is one of those statutes that adjust employer and employee interests through multiple tradeoffs and compromises. Far be it from courts to disturb the balance. The petition for review is hereby denied.

PETITION DENIED

13