(Slip Opinion) OCTOBER TERM, 2011 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ROBERTS *v.* SEA-LAND SERVICES, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–1399.  Argued January 11, 2012—Decided March 20, 2012

The Longshore and Harbor Workers' Compensation Act (LHWCA) creates a comprehensive scheme to pay compensation for an eligible employee's disability or death resulting from injury occurring upon the navigable waters of the United States.  Benefits for most types of disabilities are capped at twice the national average weekly wage for the fiscal year in which an injured employee is "newly awarded compensation." 33 U. S. C. §906(c).  The LHWCA requires employers to pay benefits voluntarily, without formal administrative proceedings.  Typically, employers pay benefits without contesting liability, so no compensation orders are issued.  However,  if an employer controverts liability, or an employee contests his employer's actions with respect to his benefits, the dispute proceeds to the Department of Labor's Office of Workers' Compensation Programs (OWCP) to be resolved, if possible, through informal procedures.  An informal disposition may result in a compensation order.  If not resolved informally, the dispute is referred to an administrative law judge (ALJ), who conducts a hearing and issues a compensation order.

In fiscal year 2002, petitioner Roberts was injured at an Alaska marine terminal while working for respondent Sea-Land Services, Inc.  Sea-Land (except for six weeks in 2003) voluntarily paid Roberts benefits until fiscal year 2005.  Roberts then filed an LHWCA claim, and Sea-Land controverted.  In fiscal year 2007, an ALJ awarded Roberts benefits at the fiscal year 2002 statutory maximum rate.  Roberts sought reconsideration, contending that the award should have been set at the higher statutory maximum rate for fiscal year 2007, when, he argued, he was "newly awarded compensation" by order of the ALJ.  The ALJ denied his motion, and the Department of Labor's Benefits Review Board affirmed, concluding that the perti-

nent maximum rate is determined by the date disability commences.
The Ninth Circuit affirmed.

*Held:* An employee is "newly awarded compensation" when he first be-
comes disabled and thereby becomes statutorily entitled to benefits,
no matter whether, or when, a compensation order issues on his be-
half. Pp. 5−18.

(a) Roberts contends that the statutory term "awarded compensa-
tion" means "awarded compensation in a formal order," while Sea-
Land and the Director, OWCP, maintain that it means "statutorily
entitled to compensation because of disability." Although §906 can be
interpreted either way, only Sea-Land and the Director's interpreta-
tion makes §906 a working part of the statutory scheme. Under Rob-
erts' interpretation, no employee receiving voluntary payments has
been "awarded compensation," so none is subject to an identifiable
maximum rate of compensation. That result is incompatible with the
LHWCA's design. Section 906(b)(1) caps compensation at twice the
applicable national average weekly wage, as determined by the Sec-
retary of Labor. Section 906(b)(3), in turn, directs the Secretary to
determine that wage before each fiscal year begins, at which time it
becomes the "applicable national average weekly wage" for the com-
ing fiscal year. And §906(c), in its turn, provides that the Secretary's
determination shall apply to those "newly awarded compensation"
during such fiscal year. Through a series of cross-references, the
three provisions work together to cap disability benefits. By its
terms, and subject to one express exception, §906(b)(1) specifies that
the cap applies globally, to all disability claims. Because all three
provisions interlock, the cap functions as Congress intended only if
§906(c) also applies globally, to all such cases. Roberts' interpreta-
tion would give §906(c) no application in the many cases in which no
formal orders issue.

Using the national average weekly wage for the fiscal year in
which an employee becomes disabled coheres with the LHWCA's ad-
ministrative structure. An employer must be able to calculate the
cap in order to pay benefits within 14 days of notice of an employee's
disability, see §914(b), and in order to certify to the Department of
Labor whether the maximum rate is being paid. Similarly, an OWCP
claims examiner must verify the compensation rate in light of the
applicable cap. It is difficult to see how an employer or claims exam-
iner can use a national average weekly wage other than the one in ef-
fect at the time an employee becomes disabled. Moreover, applying
the national average weekly wage for the fiscal year in which an em-
ployee becomes disabled advances the LHWCA's purpose to compen-
sate disability, defined as "incapacity because of injury to earn the
wages which the employee was receiving at the time of injury."

§902(10). It also avoids disparate treatment of similarly situated employees; Roberts' reading would permit two employees who earn the same salary and suffer the same injury on the same day to receive different maximum compensation rates based on the happenstance of their obtaining orders in different fiscal years. Finally, applying the national average weekly wage for the fiscal year in which disability commences discourages gamesmanship in the claims process. If the fiscal year in which an order issues were to determine the cap, the fact that the national average wage rises each year with inflation would be unduly significant. Roberts' rule would reward employees who receive voluntary payments with windfalls for initiating unnecessary administrative proceedings to secure a higher rate, while simultaneously punishing employers who have complied fully with their statutory obligations to make voluntary payments. Pp. 5–13.

(b) Roberts' counterarguments are unconvincing. First, although the LHWCA sometimes uses "award" to mean "award in a formal order," the presumption that identical words used in different parts of the same Act are intended to have the same meaning, readily yields whenever, as here, the variation in the word's use in the LHWCA reasonably warrants the conclusion that it was employed in different parts of the Act with different intent. See *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581, 595.

Second, Roberts argues that, because this Court has refused to read the statutory phrase "person entitled to compensation" in §933(g) to mean "person awarded compensation," *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 477, the converse must also be true: "awarded compensation" in §906(c) cannot mean "entitled to compensation." But *Cowart*'s reasoning does not work in reverse. *Cowart* did not construe §906(c) or "award," see *id.,* at 478–479, and it did not hold that the groups of "employees entitled to compensation" and "employees awarded compensation" were mutually exclusive, see *id.,* at 477.

Finally, Roberts contends that his interpretation furthers the LHWCA's purpose of providing employees with prompt compensation by encouraging employers to avoid delay and expedite administrative proceedings. But his remedy would also punish employers who voluntarily pay benefits at the proper rate from the time of their employees' injuries, because they would owe benefits under the higher cap applicable in any future fiscal year when their employees chose to file claims. The more measured deterrent to employer delay is interest that accrues from the date an unpaid benefit came due. Pp. 13–18.

625 F. 3d 1204, affirmed.

Syllabus

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, BREYER, ALITO, and KAGAN, JJ., joined.  GINSBURG, J., filed an opinion concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 10–1399

————

## DANA ROBERTS, PETITIONER *v.* SEA-LAND SERVICES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 20, 2012]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Longshore and Harbor Workers' Compensation Act (LHWCA or Act), ch. 509, 44 Stat. 1424, as amended, 33 U. S. C. §901 *et seq.,* caps benefits for most types of disability at twice the national average weekly wage for the fiscal year in which an injured employee is "newly awarded compensation." §906(c). We hold that an employee is "newly awarded compensation" when he first becomes disabled and thereby becomes statutorily entitled to benefits, no matter whether, or when, a compensation order issues on his behalf.

I

A

The LHWCA "is a comprehensive scheme to provide compensation 'in respect of disability or death of an employee . . . if the disability or death results from an injury occurring upon the navigable waters of the United States.'" *Metropolitan Stevedore Co.* v. *Rambo*, 515 U. S. 291, 294 (1995) (quoting §903(a)). An employee's compensation depends on the severity of his disability and his preinjury pay. A totally disabled employee, for example, is

entitled to two-thirds of his preinjury average weekly wage as long as he remains disabled. §§908(a)–(b), 910.

Section 906, however, sets a cap on compensation.[1] Disability benefits "shall not exceed" twice "the applicable national average weekly wage." §906(b)(1). The national average weekly wage—"the national average weekly earnings of production or nonsupervisory workers on private nonagricultural payrolls," §902(19)—is recalculated by the Secretary of Labor each fiscal year. §906(b)(3). For most types of disability, the "applicable" national average weekly wage is the figure for the fiscal year in which a beneficiary is "newly awarded compensation," and the cap remains constant as long as benefits continue. §906(c).[2]

——————

[1] Section 906 provides, in pertinent part:
"(b) Maximum rate of compensation
"(1) Compensation for disability or death (other than compensation for death required . . . to be paid in a lump sum) shall not exceed an amount equal to 200 per centum of the applicable national average weekly wage, as determined by the Secretary under paragraph (3).

.      .      .      .      .

"(3) As soon as practicable after June 30 of each year, and in any event prior to October 1 of such year, the Secretary shall determine the national average weekly wage for the three consecutive calendar quarters ending June 30. Such determination shall be the applicable national average weekly wage for the period beginning with October 1 of that year and ending with September 30 of the next year. . . .
"(c) Applicability of determinations
"Determinations under subsection (b)(3) . . . with respect to a period shall apply to employees or survivors currently receiving compensation for permanent total disability or death benefits during such period, as well as those newly awarded compensation during such period."
[2] For those "currently receiving compensation for permanent total disability or death benefits," §906(c), the cap is adjusted each fiscal year—and typically increases, in step with the usual inflation-driven rise in the national average weekly wage. See Dept. of Labor, Division of Longshore and Harbor Workers' Compensation (DLHWC), NAWW Information, online at http://www.dol.gov/owcp/dlhwc/NAWWinfo.htm (all Internet materials as visited Mar. 16, 2012, and available in Clerk of Court's case file). Section 906(c)'s "currently receiving compensation" clause is not at issue here.

Opinion of the Court

Consistent with the central bargain of workers' compensation regimes—limited liability for employers; certain, prompt recovery for employees—the LHWCA requires that employers pay benefits voluntarily, without formal administrative proceedings. Once an employee provides notice of a disabling injury, his employer must pay compensation "periodically, promptly, and directly . . . without an award, except where liability to pay compensation is controverted." §914(a). In general, employers pay benefits without contesting liability. See *Pallas Shipping Agency, Ltd.* v. *Duris*, 461 U. S. 529, 532 (1983). In the mine run of cases, therefore, no compensation orders issue.

If an employer controverts, or if an employee contests his employer's actions with respect to his benefits, the dispute advances to the Department of Labor's Office of Workers' Compensation Programs (OWCP). See 20 CFR §§702.251–702.262 (2011). The OWCP district directors "are empowered to amicably and promptly resolve such problems by informal procedures." §702.301. A district director's informal disposition may result in a compensation order. §702.315(a). In practice, however, "many pending claims are amicably settled through voluntary payments without the necessity of a formal order." *Intercounty Constr. Corp.* v. *Walter*, 422 U. S. 1, 4, n. 4 (1975). If informal resolution fails, the district director refers the dispute to an administrative law judge (ALJ). See 20 CFR §§702.316, 702.331–702.351. An ALJ's decision after a hearing culminates in the entry of a compensation order. 33 U. S. C. §§919(c)–(e).[3]

———————

[3] In fiscal year 1971, only 209 cases out of the 17,784 in which compensation was paid resulted in orders. Hearings on S. 2318 et al. before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92d Cong., 2d Sess., 757–758 (1972). Congress enacted §906's predecessor provision, which included the "newly awarded compensation" clause, in 1972. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, §5, 86 Stat. 1253.

B

In fiscal year 2002, petitioner Dana Roberts slipped and fell on a patch of ice while employed at respondent Sea-Land Services' marine terminal in Dutch Harbor, Alaska. Roberts injured his neck and shoulder and did not return to work. On receiving notice of his disability, Sea-Land (except for a six-week period in 2003) voluntarily paid Roberts benefits absent a compensation order until fiscal year 2005. When Sea-Land discontinued voluntary payments, Roberts filed an LHWCA claim, and Sea-Land controverted. In fiscal year 2007, after a hearing, an ALJ awarded Roberts benefits at the statutory maximum rate of $966.08 per week. This was twice the national average weekly wage for fiscal year 2002, the fiscal year when Roberts became disabled.

Roberts moved for reconsideration, arguing that the "applicable" national average weekly wage was the figure for fiscal year 2007, the fiscal year when he was "newly awarded compensation" by the ALJ's order. The latter figure would have entitled Roberts to $1,114.44 per week. The ALJ denied reconsideration, and the Department of Labor's Benefits Review Board (or BRB) affirmed, concluding that "the pertinent maximum rate is determined by the date the disability commences." App. to Pet. for Cert. 20. The Ninth Circuit affirmed in relevant part, holding that an employee "is 'newly awarded compensation' within the meaning of [§906(c)] when he first becomes entitled to compensation." *Roberts* v. *Director, OWCP*, 625 F. 3d 1204, 1208 (2010) *(per curiam)*. We granted certiorari, 564 U. S. ___ (2011), to resolve a conflict among the Circuits with respect to the time when a beneficiary is "newly awarded compensation," and now affirm.[4]

---

[4] Compare 625 F. 3d 1204 (time of entitlement), with *Wilkerson* v. *Ingalls Shipbuilding, Inc.*, 125 F. 3d 904 (CA5 1997) (time of order), and *Boroski* v. *DynCorp Int'l*, 662 F. 3d 1197 (CA11 2011) (same).

## II

Roberts contends that "awarded compensation" means "awarded compensation in a formal order." Sea-Land, supported by the Director, OWCP, responds that "awarded compensation" means "statutorily entitled to compensation because of disability." The text of §906(c), standing alone, admits of either interpretation. But "our task is to fit, if possible, all parts into an harmonious whole." *FTC* v. *Mandel Brothers, Inc.*, 359 U. S. 385, 389 (1959). Only the interpretation advanced by Sea-Land and the Director makes §906 a working part of the statutory scheme; supplies an administrable rule that results in equal treatment of similarly situated beneficiaries; and avoids gamesmanship in the claims process. In light of these contextual and structural considerations, we hold that an employee is "newly awarded compensation" when he first becomes disabled and thereby becomes statutorily entitled to benefits under the Act, no matter whether, or when, a compensation order issues on his behalf.

## A

We first consider "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson* v. *Shell Oil Co.*, 519 U. S. 337, 340 (1997). The LHWCA does not define "awarded," but in construing the Act, as with any statute, "'we look first to its language, giving the words used their ordinary meaning.'" *Ingalls Shipbuilding, Inc.* v. *Director, Office of Workers' Compensation Programs*, 519 U. S. 248, 255 (1997) (quoting *Moskal* v. *United States*, 498 U. S. 103, 108 (1990)). At first blush, Roberts' position is appealing. In ordinary usage, "award" most often means "give by judicial decree" or "assign after careful judgment." Webster's Third New International Dictionary 152 (2002); see also, *e.g.,* Black's Law Dictionary 157 (9th ed. 2009) ("grant by formal process or by judicial decree").

But "award" can also mean "grant," or "confer or bestow upon." Webster's Third New International Dictionary, at 152; see also *ibid.* (1971 ed.) (same). The LHWCA "grants" benefits to disabled employees, and so can be said to "award" compensation by force of its entitlement-creating provisions. Indeed, this Court has often said that statutes "award" entitlements. See, *e.g., Astrue* v. *Ratliff*, 560 U. S. ___, ___ (2010) (slip op., at 4) (referring to "statutes that award attorney's fees to a prevailing party"); *Barber* v. *Thomas*, 560 U. S. ___, ___ (2010) (appendix to majority opinion) (slip op., at 19) (statute "awards" good-time credits to federal prisoners); *New Energy Co. of Ind.* v. *Limbach*, 486 U. S. 269, 271 (1988) (Ohio statute "awards a tax credit"); *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493, 500 (1939) (California workers' compensation statute "award[s] compensation for injuries to an employee"); see also, *e.g., Connecticut* v. *Doehr*, 501 U. S. 1, 28 (1991) (Rehnquist, C. J., concurring in part and concurring in judgment) ("Materialman's and mechanic's lien statutes award an interest in real property to workers"). Similarly, this Court has described an employee's survivors as "having been 'newly awarded' death benefits" by virtue of the employee's death, without any reference to a formal order. *Director, Office of Workers' Compensation Programs* v. *Rasmussen*, 440 U. S. 29, 44, n. 16 (1979) (quoting §906(c)'s predecessor provision, 33 U. S. C. §906(d) (1976 ed.)).

In short, the text of §906(c), in isolation, is indeterminate.

## B

Statutory language, however, "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury*, 489

U. S. 803, 809 (1989). In the context of the LHWCA's comprehensive, reticulated regime for worker benefits—in which §906 plays a pivotal role—"awarded compensation" is much more sensibly interpreted to mean "statutorily entitled to compensation because of disability."[5]

1

Section 906 governs compensation in all LHWCA cases. As explained above, see *supra,* at 3, the LHWCA requires employers to pay benefits voluntarily, and in the vast majority of cases, that is just what occurs. Under Roberts'

––––––––––

[5] JUSTICE GINSBURG's view, not advanced by any party, is that an employee is "awarded compensation" when his employer "voluntarily pays compensation or is officially ordered to do so." *Post,* at 3 (opinion concurring in part and dissenting in part). But reading "awarded compensation" as synonymous with "receiving compensation" is farther from the ordinary meaning of "award" than the Court's approach: A person who slipped and fell on a negligently maintained sidewalk would not say that she had been "awarded money damages" if the business responsible for the sidewalk voluntarily paid her hospital bills. Cf. *post,* at 3–4.

Moreover, if Congress had intended "awarded compensation" to mean "receiving compensation," it could have said so—as, in fact, it did in §906(c)'s parallel clause, which pertains to beneficiaries "currently receiving compensation for permanent total disability or death." See nn. 1–2, *supra.* JUSTICE GINSBURG's reading denies effect to Congress' textual shift, and therefore "runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.' " *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 711, n. 9 (2004).

Nor is JUSTICE GINSBURG's reliance on a single sentence of legislative history persuasive. See *post,* at 4–5. True, a Senate committee report described those "newly awarded compensation" as those "who begin receiving compensation." S. Rep. No. 92–1125, p. 18 (1972). But a subsequent House committee report did not. Cf. H. R. Rep. No. 92–1441, p. 15 (1972) (statute provides a "method for determining maximum and minimum compensation (to be applicable to persons currently receiving compensation as well as those newly awarded compensation)"). The legislative materials are a push.

interpretation of §906(c), no employee receiving voluntary payments has been "awarded compensation," so none is subject to an identifiable maximum rate of compensation. That result is incompatible with the Act's design. Section 906(b)(1) caps "[c]ompensation for disability or death (other than compensation for death required . . . to be paid in a lump sum)" at twice "the applicable national average weekly wage, as determined by the Secretary under paragraph (3)." Section 906(b)(3), in turn, directs the Secretary to "determine" the national average weekly wage before each fiscal year begins on October 1 and provides that "[s]uch determination shall be the applicable national average weekly wage" for the coming fiscal year. And §906(c), in its turn, provides that "[d]eterminations under subsection (b)(3) . . . with respect to" a fiscal year "shall apply to . . . those newly awarded compensation during such" fiscal year. Through a series of cross-references, the three provisions work together to cap disability benefits.

By its terms, and subject to one express exception, §906(b)(1) specifies that the cap applies globally, to all disability claims. But all three provisions interlock, so the cap functions as Congress intended only if §906(c) also applies globally, to all such cases. See, *e.g., FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U. S. 120, 133 (2000) ("A court must . . . interpret the statute 'as a symmetrical and coherent regulatory scheme'" (quoting *Gustafson* v. *Alloyd Co.*, 513 U. S. 561, 569 (1995))). If Roberts' interpretation were correct, §906(c) would have no application at all in the many cases in which no formal orders issue, because employers make voluntary payments or the parties reach informal settlements. We will not construe §906(c) in a manner that renders it "entirely superfluous in all but the most unusual circumstances." *TRW Inc.* v. *Andrews*, 534 U. S. 19, 29 (2001).

Recognizing this deficiency in his reading of §906(c), Roberts proposes that orders issue in every case, so that

employers can lock in the caps in effect at the time their employees become disabled. This is a solution in search of a problem. Under settled LHWCA practice, orders are rare. Roberts' interpretation would set needless administrative machinery in motion and would disrupt the congressionally preferred system of voluntary compensation and informal dispute resolution. The incongruity of Roberts' proposal is highlighted by his inability to identify a vehicle for the entry of an order in an uncontested case. Section 919(c), on which Roberts relies, applies only if an employee has filed a claim. Likewise, 20 CFR §702.315(a) applies only in the case of a claim or an employer's notice of controversion. See §702.301. We doubt that an employee will file a claim for the sole purpose of assisting his employer in securing a lower cap. And we will not read §906(c) to compel an employer to file a baseless notice of controversion. Cf. 33 U. S. C. §§928(a), (d) (providing for assessment of attorney's fees and costs against employers who controvert unsuccessfully). Roberts suggests that employers could threaten to terminate benefits in order to induce their employees to file claims, and thus initiate the administrative process. Construing any workers' compensation regime to encourage gratuitous confrontation between employers and employees strikes us as unsound.

2

Using the national average weekly wage for the fiscal year in which an employee becomes disabled coheres with the LHWCA's administrative structure. Section 914(b) requires an employer to pay benefits within 14 days of notice of an employee's disability. To do so, an employer must be able to calculate the cap. An employer must also notify the Department of Labor of voluntary payments by filing a form that indicates, *inter alia*, whether the "maximum rate is being paid." Dept. of Labor, Form LS–206, Payment of Compensation Without Award (2011), online

at http://www.dol.gov/owcp/dlhwc/ls-206.pdf.  On receipt of
this form, an OWCP claims examiner must verify the
rate of compensation in light of the applicable cap.  See
Dept. of Labor, Longshore (DLHWC) Procedure Manual
§2–201(3)(b)(3) (hereinafter Longshore Procedure Man-
ual), online at http://www.dol.gov/owcp/dlhwc/lspm/lspm2-
201.htm.  It is difficult to see how an employer can apply
or certify a national average weekly wage other than the
one in effect at the time an employee becomes disabled.
An employer is powerless to predict when an employee
might file a claim, when a compensation order might
issue, or what the national average weekly wage will be at
that later time.  Likewise for a claims examiner.[6]

Moreover, applying the national average weekly wage
for the fiscal year in which an employee becomes disabled
advances the LHWCA's purpose to compensate disability,
defined as "incapacity because of injury to earn the wages
which the employee was receiving *at the time of injury.*"
33 U. S. C. §902(10) (emphasis added).  Just as the
LHWCA takes "the average weekly wage of the injured
employee at the time of the injury" as the "basis upon

───────────

[6]JUSTICE GINSBURG's approach is either easily circumvented or un-
workable.  For example, JUSTICE GINSBURG determines that Roberts is
entitled to the fiscal year 2002 maximum rate from March 11, 2002, to
July 15, 2003, because Sea-Land was making voluntary payments
during that time.  *Post,* at 6.  But Sea-Land was paying Roberts
$933.82 per week, less than the $966.08 that the ALJ found Roberts
was entitled to receive.  Compare App. to Pet. for Cert. 101 with *id.,* at
107, Order ¶1.  If any voluntary payment suffices, regardless of an
employee's actual entitlement, then an employer can hedge against a
later finding of liability by paying the smallest amount to which the Act
might entitle an employee but controverting liability as to the remain-
der.  See, *e.g., R. M.* v. *Sabre Personnel Assocs., Inc.*, 41 BRBS 727, 730
(2007).  An employer who controverts is not subject to the Act's delin-
quency penalty.  See 33 U. S. C. §914(e).  Perhaps JUSTICE GINSBURG
gives Sea-Land the benefit of the doubt because its voluntary payments
were close to Roberts' actual entitlement.  But if that is so, then how
close is close enough?

which to compute compensation," §910, it is logical to apply the national average weekly wage for the same point in time. Administrative practice has long treated the time of injury as the relevant date. See, *e.g.,* Dept. of Labor, Pamphlet LS–560, Workers' Compensation Under the Longshoremen's Act (rev. Dec. 2003) ("Compensation payable under the Act may not exceed 200% of the national average weekly wage, applicable at the time of injury"), online at http://www.dol.gov/owcp/dlhwc/LS-560pam.htm; Dept. of Labor, Workers' Compensation Under the Longshoremen's Act, Pamphlet LS–560 (rev. Nov. 1979) (same); see also, *e.g.,* Dept. of Labor, LHWCA Bulletin No. 11–01, p. 2 (2010) (national average weekly wage for particular fiscal year applies to "disability incurred during" that fiscal year).[7]

Applying the national average weekly wage at the time of onset of disability avoids disparate treatment of similarly situated employees. Under Roberts' reading, two employees who earn the same salary and suffer the same injury on the same day could be entitled to different rates

--------

[7] Roberts accurately notes that in some cases, the time of injury and the time of onset of disability differ. We have observed that "the LHWCA does not compensate physical injury alone but the disability produced by that injury." *Metropolitan Stevedore Co.* v. *Rambo*, 515 U. S. 291, 297 (1995). From that principle, lower courts have rightly concluded that when dates of injury and onset of disability diverge, the latter is the relevant date for determining the applicable national average weekly wage. See, *e.g., Service Employees International, Inc.* v. *Director, OWCP*, 595 F. 3d 447, 456 (CA2 2010); *Kubin* v. *Pro-Football, Inc.*, 29 BRBS 117 (1995) *(per curiam).*

Likewise, in a small group of cases—those in which disability lasts more than 3 but less than 15 days—the time of onset of disability and the time of entitlement will differ. See §906(a) ("No compensation shall be allowed for the first three days of the disability . . . *Provided, however,* That in case the injury results in disability of more than fourteen days the compensation shall be allowed from the date of the disability"). In these cases, the relevant date is that on which disability and entitlement coincide: the fourth day after the onset of disability.

of compensation based on the happenstance of their obtaining orders in different fiscal years. We can imagine no reason why Congress would have intended, by choosing the words "newly awarded compensation," to differentiate between employees based on such an arbitrary criterion.

3

Finally, using the national average weekly wage for the fiscal year in which disability commences discourages gamesmanship in the claims process. If the fiscal year in which an order issues were to determine the cap, the fact that the national average weekly wage typically rises every year with inflation, see n. 2, *supra*, would become unduly significant. Every employee affected by the cap would seek the entry of a compensation order in a later fiscal year. Even an employee who has been receiving compensation at the proper rate for years would be well advised to file a claim for greater benefits in order to obtain an order at a later time. Likewise, an employee might delay the adjudicatory process to defer the entry of an order. And even in an adjudicated case where an employer is found to have paid benefits at the proper rate, an ALJ would adopt the later fiscal year's national average weekly wage, making the increased cap retroactively applicable to all of the employer's payments. Roberts candidly acknowledges that his position gives rise to such perverse incentives. See Tr. of Oral Arg. 58–59. We decline to adopt a rule that would reward employees with windfalls for initiating unnecessary administrative proceedings, while simultaneously punishing employers who have complied fully with their statutory obligations.

III

We find Roberts' counterarguments unconvincing.

A

First, Roberts observes that some provisions of the

LHWCA clearly use "award" to mean "award in a formal order," and contends that the same must be true of "awarded compensation" in §906(c). We agree that the Act sometimes uses "award" as Roberts urges. Section 914(a), for example, refers to the payment of compensation "to the person entitled thereto, without an award," foreclosing the equation of "entitlement" and "award" that we adopt with respect to §906(c) today.[8] But the presumption that "identical words used in different parts of the same act are intended to have the same meaning . . . readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *General Dynamics Land Systems, Inc.* v. *Cline*, 540 U. S. 581, 595 (2004) (internal quotation marks and citation omitted); see also, *e.g., United States* v. *Cleveland Indians Baseball Co.*, 532 U. S. 200, 213 (2001). Here, we find the presumption overcome because several provisions of the Act would make no sense if "award" were read as Roberts proposes. Those provisions confirm today's holding because they too, in context, use "award" to denote a statutory entitlement to compensation because of disability.

For example, §908(c)(20) provides that "[p]roper and equitable compensation not to exceed $7,500 shall be awarded for serious disfigurement." Roberts argues that §908(c)(20) "necessarily contemplates administrative action to fix the amount of the liability and direct its

---

[8] Other LHWCA provisions, read in context, also use award to mean "award in a formal order." For example, §§913(a) and 928(b), like §914(a), refer to the payment of compensation "without an award." And the LHWCA distinguishes between voluntary payments and those due under an order for purposes of punishing employer delinquency. Compare §914(e) (10 percent penalty for late payment of "compensation payable without an award") with §914(f) (20 percent penalty for late payment of "compensation, payable under the terms of an award").

payment."  Reply Brief for Petitioner 11.  In Roberts' view, no disfigured employee may receive benefits without invoking the administrative claims process.  That argument, however, runs counter to §908's preface, which directs that "[c]ompensation for disability shall be paid to the employee," and to §914(a), which requires the payment of compensation "without an award."  It is also belied by employers' practice of paying §908(c)(20) benefits voluntarily.  See, *e.g., Williams-McDowell* v. *Newport News Shipbuilding & Dry Dock Co.*, No. 99–0627 etc., 2000 WL 35928576, *1 (BRB, Mar. 15, 2000) *(per curiam); Evans* v. *Bergeron Barges, Inc.*, No. 98–1641, 1999 WL 35135283, *1 (BRB, Sept. 3, 1999) *(per curiam).*  In light of the LHWCA's interest in prompt payment and settled practice, "awarded" in §908(c)(20) can only be better read, as in §906(c), to refer to a disfigured employee's entitlement to benefits.

Likewise, §908(d)(1) provides that if an employee who is receiving compensation for a scheduled disability[9] dies before receiving the full amount of compensation to which the schedule entitles him, "the total amount of the award unpaid at the time of death shall be payable to or for the benefit of his survivors."  See also §908(d)(2).  Roberts' interpretation of "award" would introduce an odd gap: Only survivors of those employees who were receiving schedule benefits pursuant to orders—not survivors of employees who were receiving voluntary payments— would be entitled to the unpaid balances due their decedents.  There is no reason why Congress would have cho-

---

[9] Sections 908(c)(1) to (20) set forth a "schedule" of particular injuries that entitle an employee "to receive two-thirds of his average weekly wages for a specific number of weeks, regardless of whether his earning capacity has actually been impaired."  *Potomac Elec. Power Co.* v. *Director, Office of Workers' Compensation Programs*, 449 U. S. 268, 269 (1980).  For example, an employee who loses an arm is entitled to two-thirds of his average weekly wage for 312 weeks.  §908(c)(1).

sen to distinguish between survivors in this manner. And the Benefits Review Board has quite sensibly interpreted §908(d) to mean that "an employee has a vested interest in benefits which accrue during his lifetime, and, after he dies, his estate is entitled to those benefits, regardless of when an award is made." *Wood* v. *Ingalls Shipbuilding, Inc.*, 28 BRBS 27, 36 (1994) *(per curiam)*.[10]

Finally, §933(b) provides: "For the purpose of this subsection, the term 'award' with respect to a compensation order means a formal order issued by the deputy commissioner, an administrative law judge, or Board." Unless award may mean something other than "award in a com-

───────────

[10] Roberts' interpretation also would afford unwarranted significance to the entry of an order in other circumstances, resulting in arbitrary distinctions within other classes of beneficiaries. For example, §908(c)(22) provides that if an employee suffers from more than one scheduled disability, the "awards" for each "shall run consecutively." Under Roberts' interpretation, §908(c)(22) would require consecutive payments only for employees who were receiving scheduled disability benefits pursuant to orders; those receiving voluntary payments presumably would be entitled to concurrent payments. See §§914(a)–(b). That result would conflict with §908(c)(22)'s text, which states that consecutive payments must be made "[i]n any case" involving multiple scheduled disabilities. See, *e.g., Thornton* v. *Northrop Grumman Shipbuilding, Inc.*, 44 BRBS 111 (2010) *(per curiam)*.

Similarly, §910(h)(1) sets out two formulas for increasing benefits for pre-1972 disability or death in light of the higher rates Congress provided in the 1972 LHWCA amendments. The first applies to those receiving compensation at the then-applicable maximum rate; the second applies to those "awarded compensation . . . at less than the maximum rate." See Dept. of Labor, OWCP Bulletin No. 10–73, Adjustment of Compensation for Total Permanent Disability or Death Prior to LS/HW Amendments of 1972, pp. 2–4 (1973). Roberts' interpretation would make the second formula applicable only to beneficiaries receiving less than the maximum rate pursuant to orders, not to all such beneficiaries. Again, there is no reason to believe that Congress intended this distinction, nor has OWCP applied it. See *ibid.* (prescribing a "uniform" method for computing the increase in all "[c]ases being compensated at less than the maximum rate," with no reference to the existence of an order).

pensation order," this specific definition would be unnecessary. Roberts contends that this provision, enacted in 1984, "was indeed 'unnecessary'" in light of *Pallas Shipping*. Brief for Petitioner 29; see 461 U. S., at 534 ("The term 'compensation order' in the LHWCA refers specifically to an administrative award of compensation following proceedings with respect to the claim"). Roberts' argument offends the canon against superfluity and neglects that §933(b) defines the term "award," whereas *Pallas Shipping* defines the term "compensation order." Moreover, Congress' definition of "award," which tracks Roberts' preferred interpretation, was carefully limited to §933(b). Had Congress intended to adopt a universal definition of "award," it could have done so in §902, the LHWCA's glossary. Read in light of the "duty to give effect, if possible, to every clause and word of a statute," *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (internal quotation marks omitted), §933(b) debunks Roberts' argument that the Act always uses "award" to mean "award in a formal order" and confirms that "award" has other meanings.

B

Next, Roberts notes that this Court has refused to read the statutory phrase "person entitled to compensation" in §933(g) to mean "person awarded compensation." See *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 477 (1992) ("[A] person entitled to compensation need not be receiving compensation or have had an adjudication in his favor"). In Roberts' view, the converse must also be true: "awarded compensation" in §906(c) cannot mean "entitled to compensation." But *Cowart*'s reasoning does not work in reverse. *Cowart* did not construe §906(c) or the term "award," but relied on the uniform meaning of the phrase "person entitled to compensation" in the LHWCA. See *id.,* at 478–479. As just explained, the LHWCA contains no uniform meaning of the term "award." Moreover, *Cowart*

did not hold that the groups of "employees entitled to compensation" and "employees awarded compensation" were mutually exclusive. The former group includes the latter: The entry of a compensation order is a sufficient but not necessary condition for membership in the former. See *id.,* at 477.

C

Finally, Roberts contends that his interpretation furthers the LHWCA's purpose of providing employees with prompt compensation by encouraging employers to avoid delay and expedite administrative proceedings. But Roberts' remedy would also punish employers who voluntarily pay benefits at the proper rate from the time of their employees' injuries. These employers would owe benefits under the higher cap applicable in any future fiscal year when their employees chose to file claims. And Roberts' remedy would offer no relief at all to the many beneficiaries entitled to less than the statutory maximum rate.

The more measured deterrent to employer tardiness is interest that "accrues from the date a benefit came due, rather than from the date of the ALJ's award." *Matulic* v. *Director, OWCP*, 154 F. 3d 1052, 1059 (CA9 1998). The Director has long taken the position that "interest is a necessary and inherent component of 'compensation' because it ensures that the delay in payment of compensation does not diminish the amount of compensation to which the employee is entitled." *Sproull* v. *Director, OWCP*, 86 F. 3d 895, 900 (CA9 1996); see also, *e.g., Strachan Shipping Co.* v. *Wedemeyer*, 452 F. 2d 1225, 1229 (CA5 1971). Moreover, "[t]imely controversion does not relieve the responsible party from paying interest on unpaid compensation." Longshore Procedure Manual §8-201, online at http://www.dol.gov/owcp/dlhwc/lspm/lspm8-201.htm. Indeed, the ALJ awarded Roberts interest "on each unpaid installment of compensation from the date the compensation became due." App. to Pet. for Cert. 108,

Order ¶5.[11]

\*     \*     \*

We hold that an employee is "newly awarded compensation" when he first becomes disabled and thereby becomes statutorily entitled to benefits, no matter whether, or when, a compensation order issues on his behalf.[12]  The judgment of the Court of Appeals for the Ninth Circuit is affirmed.

*It is so ordered.*

––––––––––

[11] Thus, as under JUSTICE GINSBURG's approach, an employer who controverts still "runs the risk" of greater liability if an ALJ awards an employee compensation at some point subsequent to the onset of disability.  See *post,* at 5.

[12] Because "newly awarded compensation," read in context, is unambiguous, we do not reach respondents' argument that the Director's interpretation of §906(c) is entitled to deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984).

# SUPREME COURT OF THE UNITED STATES

No. 10–1399

DANA ROBERTS, PETITIONER *v.* SEA-LAND
SERVICES, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 20, 2012]

JUSTICE GINSBURG, concurring in part and dissenting in part.

Section 906 of the Longshore and Harbor Workers' Compensation Act (LHWCA or the Act) defines the maximum disability benefit an injured worker may receive under the Act. Specifically, §906 states that an injured employee may receive, at most, twice the national average weekly wage for the fiscal year in which the employee is "newly awarded compensation." 33 U. S. C. §906(c). The Court granted review in this case to answer the following question: When is an employee "newly awarded compensation"?

Petitioner Dana Roberts contends that an employee is "newly awarded compensation" in the year she receives a formal compensation award. For the reasons cogently explained by the majority, that argument is untenable. See *ante,* at 5–17. Unlike the Court, however, I do not regard as reasonable respondent Sea-Land Services' view that an employee is "newly awarded compensation" in the year she becomes "statutorily entitled to compensation." *Ante,* at 5–6. Applying the common meaning of the verb "award" and recognizing the Act's distinction between benefits paid voluntarily, and those paid pursuant to a compensation order, see *ante,* at 2–3, I would hold that an injured worker is "newly awarded compensation" when (1)

the employer voluntarily undertakes to pay benefits to the employee, or (2) an administrative law judge (ALJ), the Benefits Review Board (BRB), or a reviewing court orders the employer to pay such benefits.

I

In determining the meaning of a statutory phrase, "we look first to its language, giving the words used their ordinary meaning." *Moskal* v. *United States*, 498 U. S. 103, 108 (1990) (internal quotation marks and citations omitted). As the Court acknowledges, *ante,* at 5, the verb "award" ordinarily means "to give by judicial decree" or "[to] assign after careful judgment." Webster's Third New International Dictionary 152 (2002). See also Black's Law Dictionary 157 (9th ed. 2009) (defining the verb "award" as "[t]o grant by formal process or by judicial decree"). Giving "award" this usual meaning, an employee is "newly awarded compensation," if not voluntarily paid, in the fiscal year in which payment is directed by administrative order or judicial decree.

Under the LHWCA, the Court recognizes, an employee is provided compensation voluntarily or in contested proceedings. See *ante,* at 3. Most commonly, an employer pays compensation voluntarily after receiving an employee's notice of disabling injury. See *Pallas Shipping Agency, Ltd.* v. *Duris*, 461 U. S. 529, 532 (1983); 33 U. S. C. §912 (describing the form, content, and timing of the necessary notice and requiring employers to designate a representative to receive the notice); §914(b). If an employer declines to pay compensation voluntarily, an injured employee can file a claim with the Department of Labor's Office of Workers' Compensation Programs (OWCP). For employees with valid claims, OWCP proceedings culminate with an administrative or court decision ordering the employer to pay benefits. §919(c). Thus, an injured worker is given—or "awarded"—compensation

through one of two means contemplated by the Act: either the employer voluntarily pays compensation or is officially ordered to do so. Logically, then, the worker is "newly awarded compensation" when one of those two events occurs.

The Court does not take this approach. After acknowledging that it is not relying on the typical meaning of the word "award," see *ante,* at 5, the Court adopts Sea-Land's view that "awarded compensation" is synonymous with "[became] statutorily entitled to benefits," *ante,* at 18. As a result, a person is "newly awarded compensation" in the year in which she becomes entitled to benefits—*i.e.,* in the year the employee "first becomes disabled." *Ibid.* Such a reading is plausible, the Court asserts, because "this Court has often said that statutes 'award' entitlements." *Ante,* at 6 (citing cases).

I do not dispute that statutes are often characterized as "awarding" relief to persons falling within their compass. But "a statute must be read in [its] context." *Ante*, at 7 (quoting *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989)). Section 906 does not address *whether* the LHWCA, as a general matter, "awards" disability benefits to injured longshore workers. Rather, it concerns a more specific question: *when* has a *particular employee* been "newly awarded compensation." In that context, equating "awarded compensation" with "statutorily entitled to compensation" is not plausible. A person covered by the Act would not likely say he was "awarded compensation" the moment he became disabled, if, in fact, his employer contests liability. Only after some entity—the employer, an ALJ, the BRB, or a reviewing court—recognizes the employee's right to compensation would he comprehend that he had been "awarded compensation." To borrow THE CHIEF JUSTICE's example: No person who slips and injures herself on a negligently maintained sidewalk would tell her friends the next day, "Guess what,

I was newly awarded money damages yesterday." See Tr. of Oral Arg. 28.

The inconsistency between the Court's interpretation of "newly awarded compensation" and my reading of the phrase is best illustrated by contextual example. Assume an employee is injured in 2002 and the employer refuses to pay compensation voluntarily. Then, five years later, an ALJ finds in favor of the employee and orders the employer to pay benefits to the employee. Under the Court's view, the employee was "newly awarded compensation" in 2002, even though the employee did not receive a penny—and the employer was not obligated to pay a penny—until 2007. Only the most strained interpretation of "newly awarded" could demand that result.[1]

The Court's view, moreover, does not fit the Act's design. As explained *supra,* at 2–3, the Act envisions that an eligible employee will begin receiving benefits in either of two ways. The Court's interpretation disregards this design, assuming instead that all employees are awarded benefits in the same way: by the Act at the time they become disabled.

Section 906(c)'s legislative history further confirms that Congress intended "newly awarded compensation" to have its commonsense meaning. In describing §906, the Senate Committee on Labor and Public Welfare reported:

----

[1] As the Court notes, the maximum rate for a given fiscal year applies to two groups of injured workers: those who are "newly awarded compensation during such [year]," and those who are "currently receiving compensation for permanent total disability or death benefits during such [year]." 33 U. S. C. §906(c). *Ante,* at 7, n. 5. Contrary to the Court's charge, I do not read "newly awarded compensation" as synonymous with "currently receiving compensation." See *ibid.* An injured worker who is "currently receiving compensation" in a given fiscal year was "newly awarded compensation" in a previous year. My interpretation therefore gives "effect to Congress' textual shift," *ibid.*: It identifies two distinct groups of workers who are entitled to a given year's maximum rate.

> "[Section 906(c)] states that determinations of national average weekly wage made with respect to a [fiscal year] apply to employees or survivors currently receiving compensation for permanent total disability or death benefits, as well as those *who begin receiving compensation for the first time* during the [fiscal year]." S. Rep. No. 92–1125, p. 18 (1972) (emphasis added).

Congress therefore believed an injured worker is "newly awarded compensation" in the year in which she "begin[s] receiving compensation for the first time." *Ibid.* Again, an employee begins receiving compensation either when an employer voluntarily agrees to pay the employee benefits or when an ALJ, the BRB, or a court orders the employer to do so. See *supra,* at 2–3. When the employer resists payment, the employee will not necessarily begin receiving compensation in the year in which she becomes disabled.

Finally, interpreting "newly awarded compensation" to mean awarded through an employer's voluntary decision or an official order is consistent with the Act's goal of encouraging employers to pay legitimate claims promptly. See 33 U. S. C. §914(a) (requiring employers to pay compensation "periodically, promptly, and directly"); *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 498 (1992) (Blackmun, J., dissenting) ("[T]he Act presumes that employers, as a rule, will promptly recognize their LHWCA obligations and commence payments immediately."). Under my interpretation, an employer who chooses to contest a valid claim, rather than to pay the claim voluntarily, runs the risk that it may ultimately have to pay the injured employee a higher maximum benefit. For example, if an employer refuses to pay benefits to a worker injured in 2012, and an ALJ issues an order awarding compensation to the employee in 2015, the fiscal year 2015 maximum rate would apply to the employee's claim. Had

the employer voluntarily begun paying benefits in 2012, on the other hand, the 2012 maximum rate would apply. Under the Court's reading, by contrast, an employer pays the prevailing rate for the year the employee became disabled, regardless of whether the employer in fact pays benefits immediately or years down the road.[2]

## II

In this case, Roberts was injured on February 24, 2002 and stopped working two weeks later. App. to Pet. for Cert. 4. Sea-Land and its insurer paid benefits to Roberts from March 11, 2002 until July 15, 2003. *Id.,* at 101. Sea-Land then resumed paying benefits on September 1, 2003 and continued to pay Roberts compensation until May 17, 2005, when it ceased making payments for good. *Ibid.* After Roberts filed a complaint with the OWCP, an ALJ, in October 2006, concluded that Roberts was entitled to compensation from March 11, 2002 onwards. *Id.,* at 107–108.

Applying my interpretation of §906, Roberts was newly awarded compensation three times: in March 2002 when Sea-Land voluntarily began paying benefits; in September 2003 when Sea-Land resumed making payments after it had stopped in July 2003; and in October 2006 when an ALJ ordered Sea-Land to pay benefits to Roberts for the uncompensated weeks in 2003 and from May 2005 on-wards. Roberts was therefore entitled to the fiscal year 2002 maximum rate from March 11, 2002 until July 15, 2003; the fiscal year 2003 maximum rate from September 1, 2003 until May 17, 2005; and the fiscal year 2007 rate[3]

_____

[2] Employers may have a particularly strong financial incentive to postpone paying claims that implicate §906. That section applies only to injured workers who qualify for the maximum rate of compensation under the Act—*i.e.,* to those claimants who are owed the largest possible benefit.

[3] For §906 purposes, a year runs from October 1 to September 30. See

going forward and for all uncompensated weeks covered by the ALJ's order.[4]

\*    \*    \*

For the foregoing reasons, I would reverse the Ninth Circuit's judgment and hold that an employee is "newly awarded compensation" when her employer either volun-

---

33 U. S. C. §906(b)(3). The 2007 maximum rate therefore applies to all employees "newly awarded compensation" between October 1, 2006 and September 30, 2007.

[4] The Court asserts that an employer could "easily circumven[t]" my approach by making voluntary payments to an injured worker that are substantially below the employee's "actual entitlement." *Ante,* at 10, n. 6. The prospect that an employer could successfully execute, or would even attempt, such a strategy is imaginary. Employers who make voluntary payments to employees are required to file a report with the Department of Labor describing the nature of the employee's injury and stating the amount of the payments made. See *ante,* at 9–10; 33 U. S. C. §930(a). The employer must also submit the results of a medical evaluation of the employee's condition. Dept. of Labor, Longshore (DLHWC) Procedure Manual §2–201(2)(b) (hereinafter Longshore Procedure Manual), online at http://www.dol.gov/owcp/dlhwc/lspm/lspm2-201.htm (as visited Mar. 14, 2012, and in Clerk of Court's case file). Upon receiving the employer's report, a DOL claims examiner verifies "the compensation rate for accuracy" and must follow-up with the employer "[i]f the compensation rate appears low." Longshore Procedure Manual §2–201(3)(b)(1). The chances are slim that a claims examiner would validate a substantial underpayment. Employers who underpay benefits, moreover, are subject to a penalty equal to 10% of the amount of the underpayment. See 33 U. S. C. §914(e); Longshore Procedure Manual §8–202(3)(c) ("If partial payments are made by the employer, the [10% penalty] appl[ies] . . . to the difference between the amount owed and the amount paid."). Employers would thus risk paying more, not less, were they to attempt to "circumven[t]" my approach by deliberately undercompensating injured workers. And while it is true that an employer who controverts an employee's right to compensation does not have to pay the 10% penalty, see *ante,* at 10, n. 6, the Act does not permit an employer to pay any amount it likes and controvert the remainder. See 33 U. S. C. §914(a) (requiring employers either to pay benefits in full or to controvert "liability to pay compensation" at all).

tarily agrees to pay compensation to her or is officially ordered to do so.