J-S26012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CERRONE FURMAN, | |
| Appellant | No. 1754 EDA 2017 |

Appeal from the PCRA Order Entered April 25, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0402812-2001
CP-51-CR-0402822-2001

BEFORE:  BENDER, P.J.E., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED JULY 30, 2018**

Appellant, Cerrone Furman, appeals *pro se* from the April 25, 2017 order dismissing, as untimely, his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546.  After careful review, we affirm.

> On October 22, 1999, Appellant and a co-conspirator, Marlon Mullings, assaulted Mr. Clinton, the co-owner of a Philadelphia area cement company, and forced him at gunpoint to hand over envelopes containing the company's weekly payroll.  While Appellant and Mullings were exiting the building, the co-owner of the business, Mr. McConigley, arrived in his car.  As Appellant and Mullings fled down the street toward a third co-conspirator waiting in a getaway car,[5] Mr. McConigley pursued the two in his car. When Mr. McConigley drew alongside them, Mullings fired multiple gunshots into the open driver's side window of Mr. McConigley's

_____

[*] Former Justice specially assigned to the Superior Court.

car. Appellant and Mullings jumped into the awaiting getaway vehicle and sped away. Mr. McConigley died a few minutes later as a result of the gunshot wounds to his head, chest, and neck.

[5] A fourth co-conspirator was not at the site of the robbery, because he had previously worked for the victims and feared being recognized by them. This man knew when the victims paid their employees and scheduled the robbery for the time when he believed they would have significant cash on hand.

One month earlier, on September 9, 1999, Appellant and a different man had burglarized a home in central Pennsylvania, stealing a large safe. They later forced open the safe, and Appellant and his cohorts removed four guns from it.[6] On October 13, 1999, nine days before the murder of Mr. McConigley, Appellant and three other men robbed a Harrisburg area gas station using the stolen guns. Appellant used the same stolen gun in both the Harrisburg and Philadelphia robberies.

[6] Appellant's cohorts in removing the guns from the safe included two of his co-conspirators in the Mr. Clinton robbery, but not Mullings.

Appellant raised several pre-trial motions, including a motion *in limine* to exclude evidence of the burglary and gas station robbery, which [were] denied. On April 27, 2005, a jury convicted Appellant of the aforementioned crimes. On June 17, 2005, Appellant was sentenced to life imprisonment for second-degree murder, and concurrent terms … of five to ten years[' incarceration] for conspiracy and two to five years[' incarceration] for possessing an instrument of crime.

***Commonwealth v. Furman***, No. 2100 EDA 2005, unpublished memorandum at 1-2 (Pa. Super. filed September 13, 2006). On direct appeal, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied his petition for allowance of appeal. ***Commonwealth v. Furman***, 911 A.2d 180 (Pa. Super. 2006) (unpublished memorandum), *appeal denied*, 917 A.2d 313 (Pa. 2007).

Appellant filed a timely, *pro se* PCRA petition, his first, on June 15, 2007.

Counsel was appointed, and an amended petition was filed on Appellant's

behalf on May 12, 2008. The PCRA court issued an order denying the

amended petition on December 12, 2008. Appellant did not file a timely

appeal from that order. However, on January 27, 2009, Appellant filed a

petition for leave to file a notice of appeal *nunc pro tunc*.[1] The PCRA court

reinstated his appellate rights on February 13, 2009, and Appellant promptly

filed a *nunc pro tunc* notice of appeal a week later. On July 7, 2010, this Court

vacated the February 13, 2009 order reinstating Appellant's appeal rights, and

affirmed the December 12, 2008 order denying his PCRA petition; our

Supreme Court denied Appellant's subsequent petition for allowance of

appeal. ***Commonwealth v. Furman***, 6 A.3d 549 (Pa. Super. 2010)

(unpublished memorandum), *appeal denied*, 20 A.3d 1210 (Pa. 2011).

> On August 8, 2012, [Appellant] filed the instant, *pro se* PCRA petition, his third. [Appellant] also submitted a supplemental filing in 2016 that was reviewed jointly with his 2012 petition. Pursuant to Pennsylvania Rule of Criminal Procedure 907, [Appellant] was served notice of the PCRA court's intention to dismiss his petition on February 22, 2017. [Appellant] submitted a response to the Rule 907 notice on March 14, 2017.[2] On April 25, 2017, the PCRA court dismissed his petition as untimely. On May 23, 2017, the instant notice of appeal was timely filed with the Superior Court.

---

[1] This petition constituted Appellant's second PCRA petition.

[2] Although the PCRA court characterizes this as a "response" to its Rule 907 notice, Appellant styled it as a motion for an extension of time to file his Rule 907 response.

PCRA Court Opinion (PCO), 7/5/17, at 2. The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement; it filed its Rule 1925(a) opinion on July 5, 2017.

Appellant now presents the following questions for our review:

[1.] Was the PCRA court's dismissal of [the] petition incorrect when it ignored petitioner's timely request for an enlargement of time to object to it's [*sic*] [Rule] 907 notice to dismiss[] without giving any reason why [the] request was denied[?]

[2.] Was [the] PCRA court's mis-labeling of [the] petition under a totally different subsection th[a]n petitioner had raised his claims unjustified when den[y]ing a needed hearing[] when petitioner raised "after discovered facts[?"]

[3.] Does the Equal Protection Clause to the U[nited States] Const[itution] and it's [*sic*] strict scrutiny analysis, and ordered liberty, and fundamental fairness require a hearing in this instant matter[?]

Appellant's Brief at 5.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the

judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

In Appellant's first issue, he claims that this matter must be remanded for him to file a response to the PCRA court's Rule 907 notice because the PCRA "court gave no reason" why his request for an extension of time to file his Rule 907 response was denied, citing **Commonwealth v. Hopfer**, 965 A.2d 270 (Pa. Super. 2009). As noted above, the PCRA court construed Appellant's timely request for an extension of time to file his response to the

court's Rule 907 notice as his Rule 907 response. **See** PCO at 2. Moreover, because the PCRA court did not direct Appellant to file a Rule 1925(b) statement, the court's opinion does not address Appellant's first claim.

However, Appellant fails to explain in his brief, and he did not explain in his extension-of-time request, what he specifically intended to provide in his Rule 907 response had his request been granted. In his extension-of-time request, Appellant indicated that he intended to use any enlargement of time to "[a]mend his PCRA [petition] to cure any [d]efects and [f]ile a [meritorious] objection" to the Rule 907 notice. Appellant's Application for Relief for Extension of Time and Motion for Leave to Amend PCRA and Correct Defects, 3/14/17, at 3. In his brief, filed six months later, Appellant still does not explain what *specific* issues he would have raised in a Rule 907 response.

In **Hopfer**, also involving an untimely PCRA petition, the PCRA court failed to file notice pursuant to Rule 907. We vacated the order dismissing the appellant's PCRA petition and remanded for the PCRA court to provide the appellant with an opportunity to file a Rule 907 response, rejecting the lower court's reasoning that such notice was not required because the **Turner**/**Finley**[3] procedure was scrupulously followed.[4] We held that "service

---

[3] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

[4] On that basis, the PCRA court had reasoned that the appellant "was fully aware of the deficiencies of his own claims prior to his petition being dismissed…." **Hopfer**, 965 A.2d at 274.

of any notice of dismissal, whether in the form of a Rule 907 notice by the court or a **Turner**/**Finley** no-merit letter, must occur at least [20] days prior to an official dismissal order." **Hopfer**, 965 A.2d at 275.

Instantly, the PCRA court did not violate the holding in **Hopfer**. The court filed its Rule 907 notice on February 22, 2017, and denied Appellant's petition on April 25, 2017. Appellant's argument that the court erred by not responding to his request for *additional* time to file a Rule 907 response is not analogous to a claim that the court failed to provide an appellant the opportunity to respond. Thus, **Hopfer** does not support Appellant's claim.

Moreover, with respect to untimely PCRA petitions, not every defect in Rule 907 procedure requires a remedy. Even when a petitioner preserves a claim that a PCRA court failed altogether to provide notice of dismissal under Rule 907, "it does not automatically warrant reversal" when "the petition is untimely[.]" **Commonwealth v. Taylor**, 65 A.3d 462, 468 (Pa. Super. 2013). Here, the PCRA court denied Appellant's PCRA petition as untimely, yet nothing in his argument regarding the failure of the PCRA court to grant him additional time to file a Rule 907 response bears upon the timeliness of his petition. Indeed, Appellant has failed to demonstrate that he was adversely affected at all by the absence of a Rule 907 response in this case. Accordingly, we conclude that Appellant's first claim does not entitle him to relief.

We now turn to the question of whether Appellant's PCRA petition meets one of the timeliness exceptions set forth in Section 9545(b)(1). Appellant

asserts that his discovery of "[n]ew [n]eurologic[a]l facts data" that he "copied off the internet with a time stamp of July 3rd, 2012[,]" Appellant's Brief at 7, constitutes "facts upon which the claim is predicated [that] were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[,]" 42 Pa.C.S. § 9545(b)(1)(ii). Appellant further asserts that the PCRA court misconstrued his claim as seeking relief under Section 9545(b)(1)(iii), the newly-recognized constitutional right exception.

Indeed, the PCRA court analyzed Appellant's claim under Section 9545(b)(1)(iii), as Appellant seeks to utilize his newly-discovered facts to assert that he is entitled to relief pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012). In **Miller**, the Supreme Court of the United States held that mandatory life imprisonment without parole (MLWOP) for those *under the age of 18 at the time of their crimes* violates the Eighth Amendment. Subsequently, in **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016), the High Court held that its decision in **Miller** applies retroactively on state collateral review. Here, the PCRA court determined that because Appellant was not under the age of 18 at the time he committed the offense resulting in his MLWOP sentence, he could not invoke **Miller** or **Montgomery** to satisfy Section 9545(b)(1)(iii). **See Commonwealth v. Furgess**, 149 A.3d 90 (Pa. Super. 2016) (holding that **Miller** does not apply to defendants who were over the age of 18 at the time of their offense).

Although Appellant does invoke a different timeliness exception, specifically, Section 9545(b)(1)(ii), he is still not entitled to relief. Simply put,

it is implicit in the statutory language of Section 9545(b)(1)(ii) that "the claim" that is affected by the newly-discovered facts must be a claim upon which relief *could* be granted under current law. Thus, even assuming Appellant was duly diligent in discovering the new facts at issue, those facts do not support an existing, legally cognizable claim. Proof that Appellant's brain was not a fully developed adult brain in biological terms does not entitle him to relief under **Miller**, as that decision, by its own terms, and as interpreted by this Court in **Furgess**, applies only to legal juveniles.[5] Appellant cannot simultaneously invoke a wholly novel claim (that **Miller** applies to all biological juveniles, not just legal juveniles), and newly-discovered facts to support that claim (Appellant was a biological juvenile when he committed his crime), in seeking relief under Section 9545(b)(1)(ii).[6] In our view, the legislature did not intend Section 9545(b)(1)(ii) to fully eviscerate the limitations of Section 9545(b)(1)(iii) by creating a backdoor through which one could assert the existence of previously unrecognized constitutional rights. "Statutory language 'cannot be construed in a vacuum. It is a fundamental canon of

---

[5] Herein, we define 'legal juveniles' and 'legal adults' as persons who are under and over 18 years old, respectively. 'Biological juveniles' are persons whose brains have not fully developed to biological adulthood, regardless of their legal status as juveniles or adults.

[6] This is not to say that **Miller** could never be invoked in the context of Section 9545(b)(1)(ii). Newly-discovered evidence that a petitioner was a legal juvenile when he committed his offense could satisfy that provision, because the underlying claim in that situation, a straightforward application of both **Miller** and **Montgomery**, is one upon which relief could be granted under the current interpretation of the law.

statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" ***Sturgeon v. Frost***, 136 S.Ct. 1061, 1070 (2016) (quoting ***Roberts v. Sea–Land Services, Inc.***, 566 U.S. 93, 101 (2012)).

Appellant's final claim on appeal is that equal protection principles dictate that ***Miller*** *should* apply to crimes committed by biological juveniles, not just to legal juveniles. This is a direct assertion of a new constitutional right, which falls under the purview of Section 9545(b)(1)(iii). Thus far, Pennsylvania case law has rejected this type of expansion or interpretation of the right announced in ***Miller***. ***See Furgess***, ***supra***; ***see also Commonwealth v. Montgomery***, 181 A.3d 359 (Pa. Super. 2018) (applying ***Furgess***).[7] Most importantly, neither "the Supreme Court of the United States [n]or the Supreme Court of Pennsylvania" has recognized the existence of such a right. 42 Pa.C.S. § 9545(b)(1)(iii). Thus, this claim also lacks merit.

In conclusion, we hold that Appellant has not met any exception to the PCRA's timeliness exceptions. Accordingly, we lack jurisdiction to consider the merits of his petition.

_____

[7] We acknowledge that a case raising seemingly similar arguments regarding ***Miller*** is currently pending *en banc* review before this Court. ***See Commonwealth v. Lee***, 1891 WDA 2016, Order, 3/9/2018. Nevertheless, we are bound by current precedent, as this "panel is not empowered to overrule another panel of the Superior Court." ***Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013).

Order **_affirmed_**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/18